MOHAWK DATA SCIENCES
CORPORATION, Petitioner,

v.

INDUSTRIAL COMMISSION OF the
STATE OF COLORADO (Ex-Officio
Unemployment Compensation Commission of Colorado), and Aubrey R. McLellan, Respondents.

No. 82CA1012.

Colorado Court of Appeals,
Div. I.

Feb. 10, 1983.

Coghill & Goodspeed, P.C., Paul E. Goodspeed, Denver, for petitioner.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel Cantrick, Sp. Asst. Atty. Gen., Alice L. Parker, Asst. Atty. Gen., Denver, for respondent Industrial Com'n.

Brauer, Simons & Buescher, Joseph M. Goldhammer, Denver, for respondent Aubrey R. McLellan.

ENOCH, Chief Judge.

Employer, Mohawk Data Sciences Corporation (Mohawk) seeks review of a final order of the Industrial Commission awarding claimant full unemployment compensation benefits pursuant to § 8–73–108(4), C.R.S.1973 (1982 Cum.Supp.). We affirm.

Mohawk was in the business of manufacturing, selling, leasing, and servicing computer equipment. Claimant was a customer service engineer who performed maintenance on equipment purchased or leased from Mohawk.

Mohawk's representative, a company District Service Manager, testified that claimant was discharged because of a "direct conflict with the interests" of Mohawk after Mohawk learned that claimant was working for a competitive company known as M & D Enterprises (M & D). The witness testified that claimant, while still working for Mohawk, was involved in soliciting sales on behalf of M & D to a state agency, one of Mohawk's regular customers. The witness also testified that claimant serviced a customer's equipment on behalf of M & D after the customer terminated its service contract with Mohawk.

On cross-examination, Mohawk's representative confirmed the existence of a "secondary market" for Mohawk's computer equipment. Sellers in the "secondary market" bought old equipment, refurbished it, and sold it to interested customers. The representative further stated that Mohawk was not actively engaged in selling to this market. The witness admitted that, on at least one occasion, he himself had made a profit selling some of Mohawk's equipment

in the secondary market. He also admitted that he had a conversation with claimant and claimant's immediate supervisor in which they mentioned that they had some of Mohawk's used equipment for sale. The witness testified that he did not criticize claimant for this activity, or mention that it might constitute a conflict of interest. Finally, the witness stated that he was not aware of any written policy prohibiting employees from selling old equipment in the secondary market.

Claimant admitted that he was employed by M & D while still working for Mohawk, but stated that he did not feel there was any conflict of interest. He testified that M & D only sold equipment in the secondary market, a market in which Mohawk did not participate. Further, he stated that he performed service work for M & D only if the customer had no service contract with Mohawk and the equipment was customer owned. As to the sale of equipment by M & D to the state agency, claimant admitted that he had given M & D's name to the state's purchasing agent. However, this was done after Mohawk's sales force had repeatedly ignored his advice to contact the customer.

Claimant also testified that his activities on behalf of M & D did not constitute a conflict of interest because such activities were common among Mohawk's management personnel. He testified that he worked for Mohawk in Houston between 1975 and 1978, and during that period his supervisor was actively engaged in servicing customer-owned equipment after business hours. And, he stated that Mohawk's witness was actively engaged in secondary market sales and had invited him to solicit customers in exchange for a "kickback." Claimant stated that he was not aware of a company policy prohibiting his activities.

The referee found that Mohawk failed to demonstrate that claimant's independent sales activities in the "secondary market," or his service activities for M & D, were competitive with and therefore damaging to Mohawk. The referee also found that, although claimant's activities were questionable, "company-wide activities of a similar nature" engaged in by managerial personnel made "placement of the burden for the problem" on claimant unreasonable. Consequently, the referee determined that Mohawk was primarily responsible for the separation and awarded full benefits pursuant to § 8–73–108(4), C.R.S.1973. The Commission adopted the findings and conclusions of the referee.

Mohawk contends that the uncontradicted evidence demonstrated that claimant's actions were contrary to the interests of Mohawk, and therefore, the Commission should have reduced claimant's benefits because of "gross misconduct" pursuant to § 8–73–108(3)(c), C.R.S.1973 (1982 Cum. Supp.), or "wilfull neglect or damage to [the] employer's property or interest" pursuant to § 8–73–108(9)(a)(XIII), C.R.S.1973 (1982 Cum.Supp.). We disagree.

Generally, the reason for separation from employment is a question of fact, and the Commission's determination in this regard may not be altered on review, if, as in this case, it is supported by the evidence. *Sims v. Industrial Commission,* 627 P.2d 1107 (Colo.1981). Contrary to the assertions of Mohawk, the evidence here is conflicting as to whether claimant's activities on behalf of M & D were "damaging" to Mohawk's interests, and the resolution of these conflicts is a matter properly left to the Commission in its fact-finding role. *McGinn v. Industrial Commission,* 31 Colo.App. 6, 496 P.2d 1080 (1972).

The determination of whether claimant engaged in "gross misconduct" or "wilfull neglect or damage" to Mohawk's interests is one which requires an examination of the factual context of claimant's activities. *See Sayers v. American Janitorial Service, Inc.,* 162 Colo. 292, 425 P.2d 693 (1967). The Commission's findings, supported by evidence, that claimant's superiors were engaged in similar activities, militate against the finding of gross misconduct or wilfull neglect or damage to Mohawk. Thus, contrary to Mohawk's contention, the Commission's reliance on § 8–73–108(4) is supported by the evidence, and the fact that

the sections cited by Mohawk might have been applicable does not change the result. The Commission is given wide latitude in determining which section of the statute governs a particular set of facts. *See Colorado Judicial Department v. Industrial Commission,* 630 P.2d 102 (Colo.1981).

We find no merit in the other issues raised by Mohawk.

Order affirmed.

SMITH and BERMAN, JJ., concur.