Joe A. GONZALES, Petitioner,

v.

INDUSTRIAL COMMISSION OF the STATE OF COLORADO, and Monfort of Colorado, Inc., Respondents.

No. 85SC182.

Supreme Court of Colorado,
En Banc.

July 27, 1987.

Hornbein, MacDonald, Fattor and Buckley, P.C., Philip Hornbein, Jr., Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Christa D. Taylor, Asst. Atty. Gen., Denver, for respondent Industrial Com'n.

Holland & Hart, John M. Husband, James J. Gonzales, Denver, for respondent Monfort of Colo., Inc.

KIRSHBAUM, Justice.

In *Gonzales v. Industrial Commission,* No. 84CA0804 (Colo.App. Mar. 14, 1985), an unpublished decision, the Court of Appeals affirmed an order of the Industrial Commission (the Commission) disqualifying the petitioner, Joe A. Gonzales (Gonzales), from the receipt of unemployment compensation benefits. The Court of Appeals concluded that, because Gonzales had been discharged pursuant to certain disciplinary guidelines established by his employer, the Commission properly refused to consider other circumstances relevant to Gonzales' discharge. We granted certiorari to review this conclusion, and now reverse and remand with directions.

I

From April 1982 until December 1983, Gonzales was employed by Monfort of Colorado, Inc. (Monfort) as a processing laborer at Monfort's Greeley meatpacking plant. Gonzales was issued a copy of the Monfort Information Handbook, which contained a detailed explanation of the company's five-step disciplinary program governing dis-missal of employees without regard to fault. Any employee who reached Step Five as the result of accumulated disciplinary action was automatically discharged. In this regard, the handbook provided the following pertinent information:

> [W]e have developed a NO FAULT absentee program under which all except specific Absence Occurrences listed below will be counted as Absence Occurrences REGARDLESS OF THE REASON FOR ABSENCE.
>
> . . . .
>
> If you have two (2) or more Absence Occurrences during any thirty (30) calendar day period you may be considered to have been absent excessively.
>
> . . . .
>
> An employee who has two (2) ABSENCE OCCURRENCES during any thirty (30) calendar day period will be charged with a step in the [five-step disciplinary] program, which will move that employee to the next step of the procedure.

Specifically exempted from disciplinary action were absences involving workers' compensation injury, vacation, jury duty, paid funeral leave, military leave or leave of absence approved in writing and in advance by a supervisor.

Between July 11 and December 23, 1983, Gonzales was disciplined on five separate occasions: twice for absenteeism, once for failure to follow instructions, once for failure to perform the quantity and quality of work expected and once for failure to telephone the job site thirty minutes prior to starting time when unavailable for work due to illness. Upon receiving the fifth disciplinary action, he was discharged from employment.

Gonzales applied for unemployment compensation benefits. Monfort filed a protest, asserting that Gonzales had been discharged because of excessive absenteeism and because he had exhausted all five steps of the company's disciplinary program. The Deputy of the Division of Employment and Training concluded that Gonzales was

responsible for the separation and, pursuant to section 8–73–108(9)(a)(XX), 3 C.R.S. (1983 Supp.) (now codified at § 8–73–108(5)(e)(XX), 3B C.R.S. (1986)), denied benefits.

Gonzales appealed, and a hearing was conducted by a Commission referee. The evidence at the hearing revealed several additional circumstances surrounding Gonzales' discharge. The initial discipline was imposed because Gonzales incurred two absences within a thirty-day period, specifically on June 15 and July 8, 1983. Shortly after undertaking a new work assignment processing meat on a moving conveyor belt in early August 1983, Gonzales received a second discipline for failure to follow instructions and a third discipline for failure to perform the quantity and quality of work expected. Gonzales' work performance improved, however, and his work was later complimented by a supervisor. The Step Four discipline was imposed on October 11, 1983, for failure to telephone Monfort at least thirty minutes prior to starting time when too ill to work. The final discipline was imposed when Gonzales was again absent twice within a thirty-day period during December 1983. The evidence also established that Monfort officials counseled Gonzales after both the third and fourth disciplinary sanctions and informed him that his employment would be terminated if he received a Step Five discipline.

Gonzales testified that he was physically unable to perform the quantity and quality of work expected of him when he was transferred to work on the conveyor belt in August 1983; that he was unable to notify his employer of his unavailability for work one-half hour prior to his starting time on October 11, 1983, due to gastrointestinal illness, but did telephone at the first practicable time, approximately fifteen or twenty minutes before starting time; and that he was absent from work in December 1983 due to car trouble beyond his control. The Commission referee concluded that although several of the disciplinary steps imposed on Gonzales under Monfort's process were "questionable," questions about whether any of the steps were unjustified were irrelevant. Accordingly, the referee affirmed the Deputy's decision. The Commission adopted the referee's findings of fact and conclusions of law. In affirming the Commission's order, the Court of Appeals concluded that the evidence established that Monfort properly followed its five-step disciplinary process and also established that Gonzales was discharged for excessive absenteeism.

## II

Monfort argues that a final order of the Commission may be reversed only where the evidence is insufficient to support the determination and that the Commission properly relied on Monfort's disciplinary guidelines in concluding that Gonzales should be disqualified from receiving unemployment compensation benefits. We disagree.

### A

█ It is true, of course, that the Commission's findings of fact may not be altered on review where supported by substantial evidence. *Sims v. Industrial Comm'n*, 627 P.2d 1107 (Colo.1981); *Mohawk Data Sciences Corp. v. Industrial Comm'n*, 660 P.2d 922 (Colo.App.1983); § 8–74–107(4), 3B C.R.S. (1986). However, section 8–74–107(6), 3B C.R.S. (1986), provides expressly that an Industrial Commission decision must be set aside if the findings of fact do not support the decision or if the decision is erroneous as a matter of law. Thus, a reviewing court may also consider such issues as whether the Commission applied improper principles of law in reaching its decision and whether the Commission's findings support its decision. *See, e.g., Andersen v. Industrial Comm'n*, 167 Colo. 281, 447 P.2d 221 (1968); *Mountain States Tel. & Tel. Co. v. Industrial Comm'n*, 637 P.2d 401 (Colo.App.1981). These inquiries are not forestalled simply because substantial evidence in the record supports the Commission's findings. *Andersen v. Industrial Comm'n*, 167 Colo. 281, 447 P.2d 221; § 8–74–107(6).

### B

█ Monfort asserts that when an employer establishes guidelines for determin-

ing when an employee's conduct requires discharge, an employee's discharge pursuant to those guidelines should prohibit any award of unemployment compensation benefits to that employee. However, the determination of eligibility for unemployment compensation benefits and of standards of disqualification are matters within the province of the General Assembly. *Pierce v. Industrial Comm'n,* 195 Colo. 10, 576 P.2d 1012 (1978); *Miller v. Industrial Comm'n,* 173 Colo. 476, 480 P.2d 565 (1971). Private parties may not by agreement or rule render ineffectual the rules and standards provided by statute. *E.g., Hagenbuch v. Plainwell Paper Co.,* 153 Mich.App. 834, 396 N.W.2d 556 (1986); *O'Keefe v. Tabitha, Inc.,* 224 Neb. 574, 399 N.W.2d 798 (1987). The Colorado Employment Security Act establishes the Commission and delegates to that administrative agency the responsibility of applying the standards adopted by the General Assembly to determine whether under all the circumstances of the case a particular separation from employment shall result in an award of benefits. *Pierce v. Industrial Comm'n,* 195 Colo. 10, 576 P.2d 1012; § 8–73–108(4), 3B C.R.S. (1986). Furthermore, the provisions of the act are to be interpreted liberally in favor of the employee. *F.R. Orr Constr. Co. v. Industrial Comm'n,* 188 Colo. 173, 534 P.2d 785 (1975); *Harding v. Industrial Comm'n,* 183 Colo. 52, 515 P.2d 95 (1973); *Stern v. Industrial Comm'n,* 667 P.2d 244 (Colo. App.1983).

■ Whether an employee's conduct should disqualify the employee from receiving unemployment compensation benefits is an issue quite distinct from the question of whether the employee was discharged in accordance with particular employer-generated guidelines. *Industrial Comm'n v. Moffat County School Dist.,* 732 P.2d 616 (Colo.1987); *accord, e.g., Causin v. Blache,* 498 So.2d 101 (La.Ct.App.1986); *Deering v. Unitog Rental Services,* 381 N.W.2d 486 (Minn.Ct.App.1986). It has been widely recognized that a violation of an employer's disciplinary rule does not per se require denial of unemployment benefits. *See, e.g., Industrial Comm'n v. Moffat County*

*School Dist.,* 732 P.2d 616 (schoolteacher who has been dismissed is not necessarily precluded from receiving benefits); *Escamilla v. Industrial Comm'n,* 670 P.2d 815 (Colo.App.1983) (where employer discharged claimant for fighting after warning not to engage in fighting, no disqualification from benefits because claimant acted only to protect himself against unprovoked assault by co-employee); *Mountain States Tel. & Tel. Co. v. Industrial Comm'n,* 637 P.2d 401 (Colo.App.1981) (where employer discharged claimant for accruing absences in excess of employer's attendance guidelines, no disqualification from benefits where absences due to incidental illness); *accord, e.g., Henry v. Iowa Dep't of Job Serv.,* 391 N.W.2d 731 (Iowa App.1986) (dismissal from employment does not necessarily require denial of benefits); *Claim of Sunderland,* 121 A.D.2d 779, 503 N.Y.S.2d 191 (1986) (dismissal for noncompliance with employer's attendance policy does not invariably warrant denial of unemployment benefits); *Williams v. Burlington Industries, Inc.,* 318 N.C. 441, 349 S.E.2d 842 (1986) (violation of employer's guideline will not per se disqualify claimant from benefits if claimant's actions were objectively reasonable and taken with good cause); *Gillespie v. Commonwealth,* 523 A.2d 1205 (Pa.Commw.Ct.1987) (unemployment compensation board cannot merely rely on employer's "no fault" attendance policy to dispose of claim for benefits, but must look to whether claimant was justified in absences). Such a violation is but one factor to be considered in the determination of whether a particular employee is entitled to benefits.

The Commission relied on section 8–73–108(9)(a), 3 C.R.S. (1983 Supp.) (now codified at § 8–73–108(5)(e), 3B C.R.S. (1986)), in disqualifying Gonzales from receipt of benefits. The statute provides in pertinent part as follows:

(e) Subject to the maximum reduction consistent with federal law ... if a separation from employment occurs for any of the following reasons, the employer from whom such separation occurred shall not be charged for benefits which

are attributable to such employment and, because any payment of benefits which are attributable to such employment out of the fund as defined in section 8–70–103(13) shall be deemed to have an adverse effect on such employer's account in such fund, no payment of such benefits shall be made from such fund:

. . . .

(XX) For other reasons including, but not limited to, excessive tardiness or absenteeism, sleeping or loafing on the job, or failure to meet established job performance or other defined standards, unless such failure is attributable to factors listed in paragraph (b) of subsection (4) of this section. . . .

The fundamental guide to statutory interpretation is legislative intent. *People v. District Court,* 711 P.2d 666 (Colo.1985); *People v. Mascarenas,* 706 P.2d 404 (Colo. 1985). This court must give effect to that intent when construing a statute. *People v. District Court,* 713 P.2d 918 (Colo.1986); *Ingram v. Cooper,* 698 P.2d 1314 (Colo. 1985); *Stephen v. City & County of Denver,* 659 P.2d 666 (Colo.1983). Section 8–73–108, 3B C.R.S. (1986), specifically provides in pertinent part:

**Benefit awards.** (1)(a) In the granting of benefit awards, it is the intent of the general assembly that the division at all times be guided by the principle that unemployment insurance is for the benefit of persons unemployed through no fault of their own; and that each eligible individual who is unemployed through no fault of his own shall be entitled to receive a full award of benefits. . . .

The disqualification provision of section 8–73–108(5)(e) must be read in light of this express legislative intent to provide benefits to those who become unemployed through no fault of their own. *Sims v. Industrial Comm'n,* 627 P.2d 1107 (Colo. 1981); *see* § 8–70–102, 3B C.R.S. (1986). Our Court of Appeals has frequently recognized that under the terms of particular disqualification provisions disqualification is inappropriate if the totality of the circumstances establishes that a claimant was unemployed through no fault of his own. *Frontier Airlines, Inc. v. Industrial Comm'n,* 719 P.2d 739 (Colo.App.1986); *Zelingers v. Industrial Comm'n,* 679 P.2d 608 (Colo.App.1984); *Hospital Shared Services of Colo. v. Industrial Comm'n,* 677 P.2d 447 (Colo.App.1984). At a minimum, the claimant must have performed some volitional act or have exercised some control over the circumstances resulting in the discharge from employment. *Rulon v. Industrial Comm'n,* 728 P.2d 739 (Colo.App. 1986); *Zelingers v. Industrial Comm'n,* 679 P.2d 608; *Escamilla v. Industrial Comm'n,* 670 P.2d 815.

▪ Here, Gonzales was dismissed solely because he had received five disciplines in Monfort's five-step disciplinary program. Two of those disciplinary steps, including the fifth one that precipitated his dismissal, were imposed under a "no-fault" policy that by its very definition prohibits any consideration of whether the absences were justified or unavoidable. While such a policy may form an appropriate basis for discharge from employment, because it insulates the employee's conduct and the circumstances surrounding such conduct from scrutiny, it cannot serve as a rule of law automatically disqualifying the discharged employee from statutory benefits to which, upon careful consideration, he or she might be entitled. Furthermore, adoption of such an approach would in effect grant employers ultimate authority to determine that some claimants automatically should not receive unemployment compensation benefits—a decision that is committed to the discretion of the Commission and that must be exercised independently in each case under the guidelines established by the General Assembly.

In determining whether the claimant is responsible for the separation from employment, the Commission must consider a variety of factors. § 8–73–108(4), 3B C.R.S. (1986). Included among these factors are failure to meet quantity and quality performance standards, § 8–73–108(4)(j), 3B C.R.S. (1986) (claimant may be entitled to full award where physically or mentally unable to perform the work), and failure to timely notify the employer of an illness,

§ 8–73–108(4)(b)(II), 3B C.R.S. (1986) (failure to notify employer of illness or emergency prior to absence will not necessarily preclude award of benefits).

In concluding that satisfaction of Monfort's discharge program automatically constituted fault by Gonzales, the Commission failed to apply the correct statutory criteria and, accordingly, did not exercise its discretion appropriately in this case. On remand, such evidentiary matters as the "no-fault" characteristic of Monfort's plan and the circumstances surrounding all of Gonzales' conduct warrant careful consideration in the determination of whether Gonzales was unemployed through no fault of his own.

### C

 There is a presumption that the General Assembly intends a just and reasonable result in enacting a statute, and a statutory construction that leads to an unreasonable result will not be applied. *Ingram v. Cooper*, 698 P.2d 1314 (Colo.1985); *Allen v. Charnes*, 674 P.2d 378 (Colo.1984). Statutory terms should be given their plain, generally accepted meaning. *People v. District Court*, 713 P.2d 918 (Colo.1986); *Trinity Universal Ins. Co. v. Hall*, 690 P.2d 227 (Colo.1984); *Clark v. Town of Estes Park*, 686 P.2d 777 (Colo.1984). Monfort concedes that in determining whether a particular claimant's absences are excessive under section 8–73–108(5)(e)(XX) the Commission must apply the reasonable and ordinary meaning of the term "excessive." Because the Commission automatically accepted the employer's definition of excessive absenteeism, the Commission must also determine on remand whether the four absences incurred by Gonzales in his approximately twenty months of employment constituted excessive absenteeism within the reasonable and ordinary meaning of the term "excessive." *See, e.g., Stevenson v. Industrial Comm'n*, 705 P.2d 1020 (Colo.App.1985) (unemployment benefits may not be denied on basis of excessive absenteeism where dismissal results from single unauthorized absence from work).

### III

The judgment of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals with directions to return the case to the Industrial Claim Appeals Office (formerly the Commission) for further proceedings consistent with the views expressed in this opinion.