Vern BOSTRON, Bruce Autler, Frances Blair, Thomas Chambers, Jiri Chytil, Juan Contreraz, Gordon Crow, Robert Dorsey, Oliver Foster, Charles Freeman, Jean Gustafson, Clifton Hardin, John Hernandez, Randy Hoffman, Gene Kreft, Jere Joyner, Paul Kacnik, Ray Leigh, Alan Leonard, Robert Leroux, Steve McCarty, James Noble, William Pierce, James Sanderson, Steven Seal, Robert Smith, Gary Thompson, Jack Vanhook, Lewis Wagner, James Wind, Tim White, Plaintiffs–Appellants,

v.

COLORADO DEPARTMENT OF PERSONNEL and Jo Ann Soker, in her official capacity as Executive Director of the Department of Personnel, Defendants–Appellees.

No. 92CA0926.

Colorado Court of Appeals, Div. III.

July 29, 1993.

Rehearing Denied Sept. 16, 1993.

Nora V. Kelly, Vonda G. Hall, Denver, for plaintiffs-appellants.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge TURSI.

Plaintiffs are employed as Port of Entry (POE) officers for the State of Colorado. In this appeal, they challenge the trial court's judgment upholding a decision issued by the Executive Director of the Colorado Department of Personnel which placed them in the occupational grouping of Office Support and Related Services (OSR) rather than the occupational grouping of Enforcement and Protective Services (EPS). We reverse and remand for further proceedings.

Section 24–50–104(5)(a), C.R.S. (1992 Cum. Supp.) requires that the state director of personnel determine prevailing wage rates from surveys conducted by independent public and private agencies. This requirement is known as the "survey of surveys," and it is applied according to various occupational groupings created by the director.

With respect to the occupational groupings, § 24–50–104(3)(b), C.R.S. (1988 Repl. Vol. 10B) requires that "the classification system shall be based on sound systematic occupational analysis and position evaluation methods which provide for consistent occupational grouping of classes and uniform alignment of classes and salaries among the various departments, institutions, and agencies." Section 24–50–104(3)(d), C.R.S. (1988 Repl.Vol. 10B) further requires that "classes of positions shall be grouped and related to occupational levels of work which can be clearly distinguished and logically related to a compensation system."

Although the director concedes that she was not limited to the number of groups to be created, she established ten such groupings. They are: Physical Science and Engineering; Management; Labor, Trades &

Crafts; Medical; Health Care Services; Office Support & Related Services; Financial Services; Enforcement & Protective Services; Professional Services; and Teachers.

POE officers act under the authority and direction of the executive director of the department of revenue and are responsible for operating port of entry weigh stations. Pursuant to § 42–8–104(2), C.R.S. (1992 Cum.Supp.):

The personnel of a port of entry weigh station, during the time that they are actually engaged in performing their duties as such and while acting under proper orders or regulations issued by the executive director of the department of revenue, shall have and exercise all the powers invested in peace officers in connection with the enforcement of the provisions of this article, part 4 of article 4 of this title, and section 42–4–234 and article 6 of title 43, C.R.S.; except that they shall not have the power to serve civil writs and process and, in the exercise of their duties, such personnel shall have the authority to restrain and detain persons or vehicles and may impound any vehicle until any tax or license fee imposed by law is paid or until compliance is had with any tax or regulatory law or regulation issued thereunder.

Initially, plaintiffs were placed within the Professional Services occupational grouping, but that determination was overturned on appeal to the district court. On remand, the director reclassified plaintiffs within the OSR grouping with the result that plaintiffs received a pay increase of only 2.5 percent compared to the 5 percent increase given to EPS employees.

■ Plaintiffs again challenged the director's determination arguing that they should have been placed within the EPS grouping. The trial court upheld the director's reclassification decision noting that, although there were certain features connected with the POE position that "did not fit comfortably" with either grouping, the director's choice of the OSR grouping made neither "more nor less sense" than placing plaintiffs in the EPS grouping. We agree with the trial court that the EPS grouping as presently constituted does not present a more appropriate classification for the plaintiffs. However, we consider the director's placement of plaintiffs in the OSR grouping, as constituted, to be irreconcilable with the duties assigned to and performed by the POE officers.

Because neither grouping adequately encompasses the nature of the duties performed by POE officers and other similarly situated officers, we conclude that the director's classification constitutes a denial of statutory rights granted to these officers. Therefore, we hold that the classification structure must be modified to accommodate POE officers within a relevant occupational grouping.

In the department's description of the various occupational groupings, which appears as part of the record, the OSR and EPS groupings are defined as follows:

*Office Support and Related*

These occupations perform support work primarily concerned with the preparation, coding, transcription, systematization, preservation, and distribution of documents and records; storage and distribution of materials and supplies; operation of equipment to produce and duplicate written documents and audio/visual aids; operation of equipment to facilitate communications; collection of fees and debts; and sales transactions. The work involves various degrees of interpretation and application of instructions and guidelines where the primary emphasis is on processing of information, operating equipment to produce data and documents or to facilitate communication, or coordinating office activities, practices, and procedures. The work requires a combination of practical knowledge and skills generally gained through on-the-job training and/or relatively short training courses in a specific skill or equipment operation. Included are first and second level supervisors.

These occupations have (local supply and pay patterns) a relatively short learning period, and advancement is based on job

modification and the ability to do more difficult tasks within the job family.

*Enforcement and Protective Services*

These occupations perform services where peace officer level I or level II status is granted by statute with the authority and duty to enforce criminal laws and are responsible for the prevention, detection, and investigation of crime. This group is concerned with the protection of persons and property against loss, injury, or disturbance resulting from criminal acts, accidents, and other hazards. Training and skill in the use of weapons is required, as is the periodic qualification with such weapons. Employees must satisfy requirements set forth in statute to carry out their commission and duties, and generally require certification by the Peace Officers Standards and Training Board. Included are supervisors and operating managers.

These occupations have regional supply and pay patterns, a relatively short learning time for normal duties with a large amount of specialized formal training, and advancement is through examination in a paramilitary type organizational structure.

NOTE: Occupations performing inspection or regulatory functions for the purpose of maintaining compliance with technical or professional standards, specifications, contracts, or civil code are not included in this occupational grouping. Such occupations are best evaluated in the families containing their specific professions.

The director addressed the full range of duties performed by POE officers in her decision:

> Port of Entry Officers are empowered by statute to restrain persons and to retain, seize, and impound vehicles which are determined to be out of compliance with the numerous laws that the Port of Entry Officers enforce. Frequently, Port of Entry Officers are called upon to detain individuals in areas in which they are alone, without backup. They are authorized to write citations and issue summons for violations of the law. They are required to be knowledgeable in numerous regulations of wide variety, ranging from hazardous material transportation requirements to vehicle size and weight limitations to agricultural commodity regulations.

> They work in close cooperation with the State Patrol regarding stolen vehicles and stolen goods. In fact, Port of Entry Officers have been responsible for the detection and ultimate impounding of huge quantities of drugs which drivers were attempting to transport through Colorado.

> Port of Entry Officers were approved by the State Controller for treatment under the Fair Labor Standards Act under the special provisions of the Act covering law enforcement personnel.

The director further referred to the admission made by many of the plaintiffs that, despite their broad range of job activities, they do not qualify under the EPS definition because they are level III Peace Officers. *See* § 42–8–104(2), C.R.S. (1984 Repl.Vol. 17); § 18–1–901(1)(IV), C.R.S. (1986 Repl.Vol. 8B). The director explained that the primary distinction between levels I and II as opposed to other levels of Peace Officer status is that the former function in positions in which they are authorized and trained to carry weapons. *See* §§ 24–31–301(5) & 24–31–303, C.R.S. (1992 Cum. Supp.) and Department of Law Regulation No. 3.1.1, 4 Code Colo.Reg. 901–1. The EPS definition, the director stated, was intended to reflect that distinction and, in so doing, preserve salary relationships that would be appropriate only for those positions given a Peace Officer I or II designation. We conclude that the director's decision in this regard was well within her discretion.

The director acknowledged, however, that POE officers are not clerks and that the OSR grouping, while possibly a closer match than the other occupational groupings, is "not on its face clearly inclusive of the types of work performed by the POE officers."

**599**

A comparison of the definitions for the EPS and OSR groupings substantiates the director's observations. Not only does the EPS description specifically omit any reference to Peace Officer III, but it also expressly excludes occupations performing inspections or regulatory functions. Such responsibilities comprise the major component of plaintiffs' job duties which, as admitted by the director, do not fall within the class of clerical activities that characterize the OSR groupings.

 Agency action taken pursuant to statutory authority is presumed valid. *Charnes v. Lobato*, 743 P.2d 27 (Colo.1987). However, courts are not bound by an agency's decision that misconstrues or misapplies the law. *Resolution Trust Corp. v. Shipley*, 809 P.2d 1073 (Colo.App.1990). Rather, the court is to determine all questions of law, interpret the applicable statutes and state regulations, and apply such interpretation to the facts as duly found or established. *Colorado Department of Social Services v. Davis*, 796 P.2d 494 (Colo. App.1990).

A reviewing court may set aside any action taken which is in excess of the agency's statutory authority or otherwise contrary to law. Section 24–4–106(7), C.R.S. (1988 Repl.Vol. 10A).

The statutory directive contained in § 24–50–104(3) requires that occupational groupings be comprised of logically related positions. Here, the director conceded that plaintiffs were being included in the OSR grouping simply by process of elimination. She considered and rejected the suggestion that a new occupational group be created for level III Peace Officers on the grounds that it would be impossible to find comparable jobs upon which to determine salaries and would defeat the purpose of creating broad occupational groupings.

While we recognize the difficulty involved in devising occupational groupings inclusive of every type of position involved in the state personnel system, we must be guided by the presumption that the General Assembly intends a just and reasonable result in enacting a statute and that a statutory construction that leads to an un-reasonable result will not be applied. *Gonzales v. Industrial Commission*, 740 P.2d 999 (Colo.1987). By categorizing plaintiffs in an occupational grouping that does not typify the primary duties performed by POE officers, we conclude that the director did not comply with the statutory mandate included in § 24–50–104(3) or the "survey of survey" requirement set forth in § 24–50–104(5).

Consequently, the judgment is reversed, and the cause is remanded with directions that the director place plaintiffs in an occupational grouping that has either been modified or newly created so as to relate more appropriately to the job functions of POE officers.

JONES and ROTHENBERG, JJ., concur.