Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 26, 2017

**2017 CO 78**

**No. 16SC596, <u>Mesa Cty. Public Library Dist. v. Indus. Claim Appeals Office</u>— Unemployment Compensation—Fault or Misconduct—Illness or Physical Disability of Employee.**

The supreme court holds that where the Division of Unemployment Insurance determines a claimant was mentally unable to perform assigned work under section 8-73-108(4)(j) of the Colorado Employment Security Act, §§ 8-70-101 to 8-82-105, C.R.S. (2016), neither the text of section 8-73-108(4)(j) nor related case law contemplates further inquiry into the cause of the claimant's mental condition, and such an inquiry is beyond the scope of the simplified administrative proceedings to determine a claimant's eligibility for benefits. The supreme court concludes that the Division's hearing officer erred in determining that the claimant committed a volitional act to cause her mental incapacity and thus was at fault for her separation from employment and disqualified from receiving unemployment benefits. The court therefore affirms the judgment of the court of appeals.

**2017 CO 78**

**Supreme Court Case No. 16SC596**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA966

**Petitioner:**

Mesa County Public Library District,

v.

**Respondents:**

Industrial Claim Appeals Office and Laurie A. Gomez.

**Judgment Affirmed**
*en banc*
June 26, 2017

**Attorneys for Petitioner:**
Bechtel & Santo
Michael C. Santo
  *Grand Junction, Colorado*

**Attorneys for Respondent Industrial Claim Appeals Office:**
Cynthia H. Coffman, Attorney General
Emmy A. Langley, Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Respondent Laurie A. Gomez:**
Karp Neu Hanlon, P.C.
Anna S. Itenberg
  *Glenwood Springs, Colorado*

**Attorneys for Amicus Curiae Colorado Plaintiff Employment Lawyers Association:**
Roseman Law Offices, LLC
Barry D. Roseman
  *Denver, Colorado*

Susan R. Hahn
  *Littleton, Colorado*

Williams & Rhodes LLP
Marisa R. Williams
  *Englewood, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE COATS** dissents.
**JUSTICE HOOD** does not participate.

¶1     The Colorado Employment Security Act (the "Act"), §§ 8-70-101 to 8-82-105, C.R.S. (2016), provides for unemployment benefits for a claimant who is involuntarily unemployed through no fault of her own.  Consistent with that overarching principle, section 8-73-108(4)(j), C.R.S. (2016), of the Act requires a full award of benefits where a claimant is determined to have been "mentally unable to perform the work."  In this case, a hearing officer found that claimant Laurie Gomez, who was terminated from her position as public services manager with the Mesa County Public Library District (the "Library"), suffered from acute stress disorder and depression and was mentally unable to perform the work required of her.  The hearing officer nevertheless disqualified Gomez from receiving unemployment benefits under section 8-73-108(5)(e)(XX), C.R.S. (2016) (disqualifying a claimant discharged for failure to meet established job performance standards), because the officer determined that Gomez's mental condition was caused by her own poor job performance, and therefore, Gomez was ultimately at fault for her separation from employment.

¶2     Gomez appealed the hearing officer's decision to the Industrial Claim Appeals Office (the "panel" or the "ICAO"), which reversed.  The panel adopted the hearing officer's finding that Gomez was mentally unable to perform her job duties, but concluded that the hearing officer's findings regarding the etiology of Gomez's medical condition were too remote from the proximate cause of her separation, and that scant evidence supported the conclusion that Gomez committed a volitional act to cause her mental incapacity.  The court of appeals affirmed the panel's decision.  Mesa. Cty. Pub. Library Dist. v. Indus. Claim Appeals Office, 2016 COA 96, ___ P.3d ___.

¶3     We granted the Library's petition for certiorari review[1] and now affirm. Neither the text of section 8-73-108(4)(j) nor related case law contemplates further inquiry into the origin or root cause of a claimant's mental condition, and such an inquiry is beyond the scope of the simplified administrative proceedings to determine a claimant's eligibility for benefits. For these reasons, we agree with the court of appeals and the panel that the hearing officer erred in determining that Gomez committed a volitional act to cause her mental incapacity and was thus at fault for her separation from employment. Accordingly, we affirm the judgment of the court of appeals.

## I. Facts and Procedural History

¶4     Gomez worked for the Mesa County Public Library for nearly twenty-five years. She was terminated from her position as the public services manager in October 2014.

¶5     Gomez began having performance issues in 2013, shortly after the Library hired a new director. In response to Gomez's request for additional staffing in her department, the new director requested that Gomez prepare an organizational capacity

---

[1] We granted certiorari to review the following issues:

1. Whether the court of appeals erred in construing section 8-73-108(4), C.R.S. (2016), to mandate that a separated employee be entitled to a full award of unemployment benefits upon a finding that she was physically or mentally unable to perform her work, even if her acute anxiety and depression resulted from her employer's justifiable demands that she perform.
2. Whether the court of appeals erred in limiting the proximate cause of the claimant's separation to her final failure to perform, and therefore in finding the reason for her debilitating physical or mental condition too attenuated from the proximate cause of her separation to establish fault.

report. Gomez had never prepared an organizational capacity report before, and the director was disappointed with her initial effort, which he described as a "data dump" lacking cohesion, context, and applicability to Gomez's department. The Library placed Gomez on two performance improvement plans for failing to manage staff effectively and failing to act professionally. Over the next year, Gomez continued to underperform. According to the director, Gomez failed to maintain accurate departmental operational capacity benchmarks, demonstrated resistance, and did not exhibit initiative.

¶6 The director placed Gomez on a third performance improvement plan and required her to prepare a satisfactory organizational capacity report by October 7, 2014, or face further disciplinary action, including possible termination. Gomez's supervisor reminded her of the October 7 deadline and offered assistance. Gomez did not indicate that she was struggling to complete the report.

¶7 On October 7, the day the Library expected Gomez to present her report, Gomez called in sick due to anxiety. The following day, Gomez came to work but did not discuss the report with her supervisors. She spent the afternoon shopping for the Library's Halloween event with a coworker. On October 9, Gomez again was absent from work due to anxiety, and did not return to work at the Library thereafter.

¶8 On October 14, Gomez submitted a doctor's note to the Library stating that she suffered from acute stress disorder and major depressive disorder and recommending that she be placed on medical leave for four to six weeks. The Library granted Gomez's request for time off.

3

¶9      While Gomez was on sick leave, Gomez's supervisor and the Library's human resources manager called Gomez at home to ask for the organizational capacity report. Gomez forwarded some documents and data, but did not have a complete report. Because the report was incomplete and unsatisfactory, the Library's director terminated Gomez, effective October 20, 2014.

¶10     At her unemployment benefits eligibility hearing before a hearing officer at the Colorado Department of Labor and Employment, Division of Unemployment Insurance (the "Division"), Gomez explained that she had felt singled out for discipline and harassment by the Library's director as a result of age discrimination, and alleged that other female employees in their fifties and sixties were terminated or pressured to resign and then replaced by younger employees. She stated that her mental health deteriorated considerably because of "the way [the Library's administrators] were coming after [her]" and because of the multiple performance improvement plans. Gomez recounted that she had "several breakdowns" at work and that her employees noticed she was "a mess." Gomez also introduced into evidence the letter from her doctor diagnosing her with acute stress disorder and major depressive disorder.

¶11     In her written order, the hearing officer found that the Library terminated Gomez in 2014 "because [she] did not present or prepare a report on organizational capacity."[2] The hearing officer also found that Gomez began suffering from acute stress

---

[2] The hearing officer rejected Gomez's age-discrimination claim.

disorder and depression in 2013, and determined that she was mentally unable to perform her job duties.

¶12 The hearing officer acknowledged that Colorado law provides for unemployment benefits if a claimant separates from employment because of a physical or mental inability to perform the work. The hearing officer nevertheless concluded that Gomez was "at fault for becoming mentally unable to perform her job duties" and therefore was disqualified from receiving unemployment benefits. She reasoned that Gomez's anxiety and depression were caused by the performance improvement plans and the Library's criticism of her job performance, but that Gomez, in turn, was responsible for this criticism "because [she] did not perform her job duties." Thus, according to the hearing officer, Gomez was ultimately "at fault for the separation from [the Library] because she failed to meet [the Library's] established job performance standards when [she] did not present or prepare a report." The hearing officer concluded that because Gomez failed to meet job performance standards and because her actions were volitional, she was disqualified from unemployment benefits pursuant to section 8-73-108(5)(e)(XX).

¶13 The ICAO panel reversed the hearing officer's decision and awarded Gomez unemployment benefits. The panel adopted the hearing officer's factual findings but rejected the hearing officer's conclusion that Gomez was disqualified because she was at fault for her mental inability to perform her job duties. The panel reasoned that the hearing officer's findings about the cause of Gomez's mental condition were "remote" from the proximate cause of her separation (i.e., Gomez's failure to complete the

requested report) and that there was "scant evidence" that Gomez "committed a volitional act to cause her mental incapacity." The panel concluded that under section 8-73-108(4)(j), the hearing officer's finding that Gomez was mentally unable to perform her job duties entitled her to an award of unemployment benefits.

¶14 In a split decision, the court of appeals affirmed the panel's award of benefits. Mesa Cty., ¶ 2. The majority noted that it was bound by the hearing officer's finding that Gomez was terminated for failing to prepare a report that she was "mentally unable to complete." Id. at ¶ 17. It then reasoned that, by finding that Gomez was mentally unable to complete the report, the hearing officer necessarily found that Gomez's conduct was "nonvolitional." Id. at ¶ 25. In other words, Gomez was "unable, not unwilling, to complete the report—and therefore she could not be at fault for her separation from employment." Id. The majority reasoned that section 8-73-108(4)(j) does not permit further inquiry into "whether the employee is 'at fault' for bringing about the 'pertinent condition' in the first instance," because the reasons behind the employee's mental inability to perform the work are too attenuated from the cause of separation. Id. at ¶¶ 26, 29. The majority thus concluded that the hearing officer "erred in ascribing fault to [Gomez] for the mental health disorder that prevented her from completing her assigned job duties." Id. at ¶ 25.

¶15 In dissent, Judge Jones explained that, in his view, the hearing officer properly disqualified Gomez pursuant to section 8-73-108(5)(e)(XX). Id. at ¶¶ 57, 59 (Jones, J., dissenting). The record, according to Judge Jones, "fully supports the hearing officer's finding that [Gomez's] anxiety, depression, and resulting inability to complete the

6

report were caused by her past job performance deficiencies, which were volitional." Id. at ¶ 64. And because "[n]othing in the language of subsection (4)(j) prohibits inquiry into the cause of the worker's inability," Judge Jones rejected the majority's conclusion that "the cause of the claimant's mental condition is irrelevant." Id. at ¶¶ 67, 66.

¶16 We granted the Library's petition for a writ of certiorari to review the court of appeals' decision.

## II. Standard of Review

¶17 A reviewing court is bound by the hearing officer's and the ICAO panel's findings of fact that are supported by substantial evidence in the record. See Gonzales v. Indus. Comm'n, 740 P.2d 999, 1001 (Colo. 1987); see also § 8-74-107(4), C.R.S. (2016). However, a reviewing court reviews de novo the officer's or panel's ultimate legal conclusion as to whether a claimant was at fault for her separation from employment. See Coates, Reid & Waldron v. Vigil, 856 P.2d 850, 856 (Colo. 1993) ("[T]he correctness of a legal conclusion drawn by the Panel from undisputed facts is a matter for the appellate court, and where the decision of the Panel is based upon an improper application of the law, a reviewing court may set aside the award."); see also Bell v. Indus. Claim Appeals Office, 93 P.3d 584, 586 (Colo. App. 2004). A reviewing court may consider whether the panel "applied improper principles of law in reaching its decision and whether the . . . findings support its decision." Gonzales, 740 P.2d at 1001; see also City & Cty. of Denver v. Indus. Comm'n ("City & Cty. of Denver"), 756 P.2d 373, 380 (Colo. 1988). In addition, section 8-74-107(6), C.R.S. (2016), provides that a hearing officer's or ICAO panel's decision may be set aside where the findings of fact

7

do not support the decision or the decision is erroneous as a matter of law. § 8-74-107(6)(c)–(d); see also Gonzales, 740 P.2d at 1001.

### III. The Colorado Employment Security Act

¶18 The Colorado Employment Security Act was designed to ease "the burden of unemployment on those who are involuntarily unemployed through no fault of their own." Colo. Div. of Emp't & Training v. Hewlett, 777 P.2d 704, 706 (Colo. 1989) (emphasis added); see also § 8-73-108(1)(a), C.R.S. (2016) ("In granting the benefit awards, it is the intent of the general assembly that the division at all times be guided by the principle that unemployment insurance is for the benefit of persons unemployed through no fault of their own; and that each eligible individual who is unemployed through no fault of his own shall be entitled to receive a full award of benefits"). "Fault" in this context is "not necessarily related to culpability, but must be construed as requiring a volitional act." City & Cty. of Denver, 756 P.2d at 377 (emphasis added) (quoting Zelingers v. Indus. Comm'n, 679 P.2d 608, 609 (Colo. App. 1984)); see also Cole v. Indus. Claim Appeals Office, 964 P.2d 617, 618 (Colo. App. 1998) (defining fault "as requiring a volitional act or the exercise of some control or choice by the claimant in the circumstances resulting in the separation such that the claimant can be said to be responsible for the separation").

¶19 We construe the Act liberally "to further its remedial and beneficent purposes." Hewlett, 777 P.2d at 707; see also Gonzales, 740 P.2d at 1002 ("[T]he provisions of the act are to be interpreted liberally in favor of the employee."). Unemployment benefits

must be granted to a discharged employee unless her job separation was due to one or more statutorily enumerated causes. Hewlett, 777 P.2d at 706–07.

¶20 Two provisions of section 8-73-108 are at play here. First, section 8-73-108(4) requires a full award of benefits if the panel determines that any of several listed conditions existed in the claimant's case. Relevant here, subsection (4)(j) of that provision mandates benefits if the claimant was terminated for "[b]eing physically or mentally unable to perform the work or unqualified to perform the work as a result of insufficient educational attainment or inadequate occupational or professional skills." § 8-73-108(4)(j) (emphasis added); see also City & Cty. of Denver, 756 P.2d at 376–77. Second, section 8-73-108(5)(e) disqualifies a claimant from receiving unemployment benefits if separation occurred for an enumerated reason. In this case, the hearing officer relied on subsection (5)(e)(XX), which disqualifies a claimant for "failure to meet established job performance . . . standards," among other reasons. See § 8-73-108(5)(e)(XX).

## IV. Analysis

¶21 We conclude that where, as here, the Division has determined a claimant was "mentally unable to perform the work" under section 8-73-108(4)(j), neither the text of that provision nor related case law contemplates further inquiry into the cause of the claimant's mental condition.[3] Moreover, such an inquiry is beyond the scope of the

---

[3] Our holding today is limited to the circumstances of this case: a claimant whom the Division has determined is mentally unable to perform the work. We do not address other aspects of section 8-73-108(4)(j).

simplified administrative proceedings to determine a claimant's eligibility for benefits. We therefore agree with the court of appeals and the panel that the hearing officer erred in determining that Gomez committed a volitional act to cause her mental incapacity and was thus at fault for her separation from employment.

## A. The text of section 8-73-108(4)(j) does not contemplate inquiry into the cause of a mental condition.

¶22    The Act requires that an employee separated from her job "shall be given a full award of benefits" if the Division determines that certain conditions existed, see § 8-73-108(4), including, as relevant here, that the employee was "physically or mentally unable to perform the work,"[4] § 8-73-108(4)(j) (emphasis added). We agree with the court of appeals that, where the Division has determined that an employee was

---

[4] We reject the ICAO's contention, raised for the first time in its briefing to this court, that section 8-73-108(4)(j) does not apply to Gomez's case because it provides for benefits only if the mental or physical inability is "a result of insufficient educational attainment or inadequate occupational or professional skills." No Colorado appellate court has adopted such a construction of subsection 4(j). See City & Cty. of Denver, 756 P.2d at 376–77 (stating, "Subsection 4(j) provides for a full award of benefits if the worker has been separated from a job for '[b]eing physically or mentally unable to perform the work'" without quoting or otherwise addressing the educational attainment and professional skills clause); Elec. Fab Tech. Corp. v. Wood, 749 P.2d 470, 472 (Colo. App. 1987) (concluding that subsection 4(j) "was written in the disjunctive and that the qualifying phrase ['as a result of insufficient educational attainment or inadequate occupational or professional skills'] modifies only the phrase 'unqualified to perform the work'"); Colo. State Judicial Dep't v. Indus. Comm'n, 630 P.2d 102, 103 (Colo. App. 1981) (stating subsection 4(j) provides that a claimant shall receive full benefits "if the separation occurred because of the [claimant]'s 'being physically or mentally unable to perform the work,'" without addressing the educational attainment and professional skills clause); Mountain States Tel. & Tel. Co. v. Indus. Comm'n, 637 P.2d 401, 402 (Colo. App. 1981) (same); Tague v. Coors Porcelain Co., 490 P.2d 96, 98 (Colo. App. 1971) ("[T]he mental inability referred to by the statute is not a narrow definition pertaining solely to intellectual or educational attainment. No such qualification has been placed upon this terminology by the legislature.").

"mentally unable to perform the work," the text of this provision does not contemplate further inquiry into the origin or root cause of the mental condition. See Mesa Cty., ¶ 26. That is, once the Division determines the existence of this condition, subsection (4)(j) does not thereupon authorize the Division to inquire whether the employee is "at fault" for causing her mental inability to perform the work in the first instance.

¶23    A finding by the Division under section 8-73-108(4)(j) that an employee is "mentally unable to perform the work" effectively amounts to a finding that the employee is not at fault for her separation from employment; it is a recognition that the employee is unable to perform, not unwilling. See id. at ¶ 25. Thus, where the Division determines a claimant was mentally unable to meet job performance standards, section 8-73-108(4) contemplates a full award of benefits. Notably, unlike other provisions in section 8-73-108(4), subsection (4)(j) contains no qualifying language. See, e.g., § 8-73-108(4)(h) ("Quitting employment because of a violation of the written employment contract by the employer; except that before such quitting the worker must have exhausted all remedies provided in such written contract for the settlement of disputes before quitting his job." (emphasis added)). Rather, the legislature has determined in subsection (4)(j) that where the Division has determined that a claimant is mentally unable to meet job performance standards, an award of benefits is appropriate.

### B.  City and County of Denver does not require a different result.

¶24    We disagree with the Library that this court's holding in City and County of Denver requires consideration of the cause of a claimant's mental condition. In that

case, the City and County of Denver terminated the claimant because she was unable to perform her job due to alcoholism. City & Cty. of Denver, 756 P.2d at 374. We reversed and remanded the court of appeals' affirmance of the Industrial Commission's (the precursor to the ICAO) award of full unemployment benefits, id., because conduct caused by alcoholism "may or may not be voluntary in the law, depending upon the degree of impairment" caused by alcoholism in a particular case, id. at 378 (quoting Huntoon v. Iowa Dep't of Job Serv., 275 N.W.2d 445, 448 (Iowa 1979)). However, our analysis in City and County of Denver is inapplicable to this case because the General Assembly has since amended the Act. Alcoholism is no longer treated as a physical or mental condition under section 8-73-108(4)(j), but instead is now separately addressed in section 8-73-108(4)(b)(IV). Subsection (4)(b)(IV) governs when the claimant was discharged for on- or off-the-job use of not-medically-prescribed intoxicating beverages and controlled substances if the claimant declares to the Division that she is addicted to such beverages or substances, substantiates her addiction with a written statement from a physician or physician assistant, and has completed, is completing, or will soon begin an addiction treatment program. § 8-73-108(4)(b)(IV)(A)–(C).

### C. Inquiry into the cause of a claimant's mental condition is beyond the scope of the simplified proceedings under the Act.

¶25 We are further persuaded that section 8-73-108(4)(j) does not permit inquiry into the cause of a claimant's mental inability to perform her work because identifying the "cause" of a mental impairment for purposes of determining "fault" is beyond the scope of unemployment benefits hearings under the Act.

12

¶26    As a practical matter, it is not feasible for a hearing officer to identify the cause of a mental condition in the context of the streamlined proceedings held to determine eligibility for unemployment benefits.  In Hewlett, 777 P.2d at 707, we "emphasize[d] that the unemployment law is intended to provide a speedy determination of eligibility through a simplified administrative procedure."  We explained that "[c]laimants and employers frequently appear pro se before adjudicators who need not be attorneys."  Id. Further, "[t]he matter in controversy is small and the legal issues are limited, and consequently, the hearings are often informal."  Id. (quoting Salida Sch. Dist. R-32-J v. Morrison, 732 P.2d 1160, 1164 (Colo. 1987)).  However, determining the root cause of an individual's mental impairment—even with the benefit of expert testimony—can be difficult at best, especially because a mental health condition is not necessarily caused by a single event:

> Research suggests multiple, linking causes.  Genetics, environment and lifestyle influence whether someone develops a mental health condition.  A stressful job or home life makes some people more susceptible, as do traumatic life events like being the victim of a crime.  Biochemical processes and circuits and basic brain structure may play a role, too.

Mental Health Conditions, Nat'l Alliance on Mental Illness, http://www.nami.org/Learn-More/Mental-Health-Conditions (last visited May 28, 2017).  Given the inherent complexity of mental illness, a claimant should not be

13

required to prove — at a brief, informal hearing, no less — that she was not at fault for the development of her mental condition.[5]

## V. Application

¶27 Here, the hearing officer found that the proximate cause of Gomez's separation was her failure to prepare and present the requested organizational capacity report. Based on documentation from a medical professional, the hearing officer accepted Gomez's claim that she was suffering from acute stress disorder and depression, and found that Gomez was mentally unable to perform her job duties — specifically, to prepare and present the requested organizational capacity report. Given these findings, Gomez was not at fault for her termination and was entitled to an award of benefits under section 8-73-108(4)(j).

¶28 The hearing officer nevertheless erroneously proceeded to ascribe fault to Gomez for developing the mental conditions that prevented her from performing her job duties. The hearing officer concluded that Gomez's "anxiety and depression were

---

[5] We emphasize that for a claimant to qualify for unemployment benefits under section 8-73-108(4)(j), the Division must find that a claimant's mental condition rendered her "unable to perform the work" required of her. A hearing officer need not automatically accept a claimant's contention in this regard and may consider the presence or absence of a diagnosis by a medical professional in reaching a conclusion. See Ward v. Indus. Claim Appeals Office, 916 P.2d 605, 608 (Colo. App. 1995) (holding that the hearing officer did not impose additional legal criteria by considering the absence of a diagnosis of a mental disorder; the hearing officer "was simply articulating some of the factual reasons" why he rejected the claimant's argument). In Armijo v. Industrial Commission, 610 P.2d 107, 108 (Colo. App. 1980), for example, the Industrial Commission "rejected claimant's testimony that stress in her employment rendered her incapable of performing her job duties and specifically found that claimant did not establish stress as a health reason for quitting her job." The claimant thus received only a reduced award of unemployment benefits. Id.

caused by [Gomez] receiving performance improvement plans and job criticism . . . [and that] [Gomez] was at fault for receiving these performance improvement plans and criticism because [she] did not perform her job duties." But because section 8-73-108(4)(j) does not permit inquiry into the cause of a claimant's mental condition, the hearing officer erred in speculating about the etiology of Gomez's mental impairment and in disqualifying Gomez from receiving benefits under section 8-73-108(5)(e)(XX) for her failure to meet job performance standards. See Gonzales, 740 P.2d at 1003–04.

¶29    We reject the Library's contention that the cause of a mental condition is relevant to determining the claimant's fault for separation. The Act provides that disqualification from unemployment benefits may result from "certain acts of individuals [that] are the direct and proximate cause of their unemployment." § 8-73-108(1)(a). The Act implicitly directs hearing officers to determine the proximate cause of a claimant's separation from unemployment.

¶30    Here, the hearing officer found that the proximate cause of Gomez's termination was her failure to complete the report, not her underperformance before she developed anxiety and depression disorders. We agree with the court of appeals that the reason for Gomez's mental condition "is too attenuated from the issue of proximate cause of the employee's separation from employment." See Mesa Cty., ¶ 27.

## VI. Conclusion

¶31    We agree with the court of appeals and the panel that the hearing officer erred in determining Gomez was at fault for her mental condition and therefore disqualified

15

from receiving unemployment benefits. We therefore affirm the judgment of the court of appeals.

**JUSTICE COATS** dissents.
**JUSTICE HOOD** does not participate.

JUSTICE COATS, dissenting.

¶32   I write in dissent from the opinion of the majority in part because I believe the liberties it takes in construing the unemployment insurance statutes are not justified and will substantially undermine the role statutorily assigned to "fault" in the awardability of benefits.  In part, however, I simply feel compelled to highlight the irony (and perhaps absurdity) of awarding benefits on the basis of physical or mental inability to perform a job, as the result of anxiety induced by the claimant's own failure to perform and her employer's corresponding demand that she do so.  I see little merit in offering another point by point refutation of the majority's arguments, which I believe to have already been largely anticipated and effectively rebutted, in some thirty-five paragraphs, by the dissenting voice on the court of appeals panel below.  See Mesa Cty. Pub. Library Dist. v. Indus. Claim Appeals Office, 2016 COA 96, ¶¶ 39–73, ___ P.3d ___ (Jones, J., dissenting).  Rather, I write separately simply to emphasize what I consider to be the fundamental flaw in the majority's reasoning, responsible for leading it so far astray.

¶33   While the majority acknowledges, as it must, that "unemployment insurance is for the benefit of persons unemployed through no fault of their own," § 8-73-108(1)(a), C.R.S. (2016), the crux of its reasoning, as I understand it, is that once it is determined that the employee has become mentally unable to perform the job, subsection (4)(j) cuts off any further inquiry into the employee's "fault" for causing her own inability to perform.  As its primary statutory justification for this proposition, the majority asserts that unlike the other enumerated reasons for mandating a full award of unemployment

1

benefits, subsection (4)(j), which deals with physical or mental inability to perform, contains no qualifying language and therefore must be taken as dispositive of the question of fault, in and of itself, without further inquiry. But this proposition disregards the framework of subsection (4) itself, the introductory language of which governs all of the subsequent paragraphs of that subsection, including (j). That introductory language makes clear that a full award of benefits is not mandated by the existence of one of the enumerated reasons alone but depends upon the consideration of any "pertinent conditions related thereto." § 8-73-108(4). The governing introductory language specifies the non-exclusive nature of the enumerated reasons by expressly admonishing that they are to be considered, "along with any other factors that may be pertinent to such determination." Id. As subsection (1)(a) makes abundantly clear, the very purpose of the inquiry is to determine whether the claimant is unemployed through no fault of her own.

¶34 In addition, subsection (4)(j) treats "physically" and "mentally," as bases for any inability to perform, with equal dignity. Surely the majority would not intend that (4)(j) cut off all further inquiry into fault regarding a physical inability to perform, rendering, for example, a claimant who shoots himself in the foot to avoid work entitled to unemployment compensation on an equal footing with a claimant who is unable to perform because of an on-the-job injury. Notwithstanding its assertion that its holding is limited to a mental inability to perform, see maj. op. ¶ 21 n.3, precisely that equivalence is, however, the necessary implication of the majority's understanding of subsection (4)(j). To the extent the majority holds that the legislatively intended

2

simplicity of the proceedings precludes inquiry into the cause of mental, but not necessarily physical, inability, apart from being difficult to square with the structure and syntax of (4)(j), such a rationale still flies in the face of the elaborate requirements for notice, written medical substantiation, and independent medical examination by an employer-chosen physician contemplated by subsection (4)(b), as prerequisites to establishing entitlement to an award whenever separation is based on the health of the worker.  See § 8-73-108(4)(b).

¶35     In any event, whenever a court is forced to rely, as does the majority, primarily on such considerations as the intended simplicity of proceedings contemplated by the General Assembly and the beneficent purposes to be served by the legislation in question, it is virtually impossible not to see judicial embellishment at work in its interpretation of that legislation.

¶36     Quite apart from the text and organization of the statute itself, however, the fundamental question raised by the majority's rationale concerns the proximateness of causation, which is clearly a matter of law and policy (as distinguished from historical or even "ultimate" fact), as to which no lower body is entitled to deference by a reviewing court.  The "etiology" of the claimant's mental inability to perform, as to which the majority will brook no inquiry, refers of course to the "cause" or "origin" of the claimant's anxiety, that is, the cause of the cause of her "failure to meet established job performance or other defined standards."  See § 8-73-108(5)(e)(XX).  By limiting the causation inquiry to the identification of a "cause" for the claimant's failure to perform the last task required of her—the straw that broke the camel's back, as distinguished

3

from the totality of the straw weighing the camel down—and further barring inquiry into the claimant's responsibility for making herself unable to perform that last task, the majority artificially (and seemingly arbitrarily) makes what is fundamentally a policy choice that fault for any behavior that causes the claimant to become mentally unable to perform is necessarily insufficiently proximate to be relevant to the determination whether the claimant is unemployed through no fault of her own.

¶37 Even if this court were limited by a fact finder's determination of the proximateness of any particular cause, from my reading of the hearing officer's order in this case, she never purported to designate the claimant's anxiety the "proximate cause" of her separation. Instead, the hearing officer found, as a matter of historical fact, a chain of causation demonstrating the claimant's fault for her separation, including findings that she failed to perform the final tasks levied upon her "because" of her anxiety and depression, and that she suffered from anxiety and depression only "because" of her employer's corrective actions, requiring her to complete tasks that she had previously failed to perform. The hearing officer never actually evaluated the terse note from the claimant's nurse practitioner recommending that she be granted sick leave for acute stress disorder and major depressive disorder and, instead, concluded merely that the claimant was at fault for becoming physically and mentally unable to perform her job duties. By accepting this conclusion as a finding that she was in fact mentally unable to perform but simultaneously rejecting that portion of the conclusion ascribing fault for any such inability, the majority manages to find itself bound, by a

4

portion of the hearing officer's findings, to reach precisely the opposite conclusion from that reached by the hearing officer.

¶38    Perhaps the greatest irony of the majority's holding today is that, unlike the addiction cases, the claimant's mental inability to perform was caused, according to her own assertions, by the very process mandated by law to protect her from arbitrary or unjustified separation.  Essentially, the majority holds that the stress of being given an opportunity to correct her previous deficiencies has rendered the claimant without the least fault for her failure to perform her job.  If that result appears to the General Assembly to be as anomalous and unfair as it does to me, it can presumably clarify its intent or, much as it has done with the problem of addiction, devise a satisfactory workaround.

¶39    I respectfully dissent.