Johnie W. MORRIS, Petitioner,

v.

CITY AND COUNTY OF DENVER, DIVISION OF EMPLOYMENT & TRAINING and The Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 91CA1373.

Colorado Court of Appeals,
Div. I.

June 4, 1992.

Rehearing Denied July 30, 1992.

Certiorari Denied Jan. 11, 1993.

Hamilton & Faatz, P.C., Jan E. Montgomery, Denver, for petitioner.

Daniel E. Muse, City Atty., Mary Ann Coyne, Asst. City Atty., Denver, for respondent City and County of Denver.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., James C. Klein, Asst. Atty. Gen., Denver, for respondents Div. of Employment & Training and Industrial Claim Appeals Office.

Opinion by Judge TURSI.

Johnie W. Morris, claimant, seeks review of a final order of the Industrial Claim Appeals Panel which disqualified him from the receipt of unemployment benefits pursuant to § 8-73-108(5)(e)(VII), C.R.S. (1986 Repl.Vol. 3B). We set aside the Panel's order in part and remand for further proceedings.

The evidence at the hearing revealed that claimant was discharged from his employment with the Denver Department of Public Works (Department) for violation of Denver's residency rule and for falsifying records. Claimant was employed by the City on September 1, 1987. At that time, Denver City Charter § C5.12-1 provided that all permanent employees of the City employed after January 1, 1979, "shall as a condition of their continued employment, reside within the corporate boundaries of the City and County of Denver, within three months after acquiring permanent status." This meant that any employee must have a permanent residence within the City limits within nine months of being hired.

The residency requirement was also codified in the career service rules and in an internal rule of the Department. While the career service rules allowed for disciplinary sanctions less severe than termination for violation of the residency rule, Department representatives testified that the internal Department rule required dismissal for any violation of the residency rule. Department representatives also testified that the Department rule was interpreted and applied so that once the rule had been violated, the violation could never be cured by moving within the City limits.

At the time claimant was hired by the City, he owned a home and lived in Littleton. Pursuant to the residency rule, he should have established a permanent residence within the City limits by June 1, 1988. But, because of pressing family reasons, claimant continued to live in Littleton beyond that date. However, claimant testified that he was aware of the residency rule and was concerned that he was in violation of it.

In February 1990, the earliest time at which claimant felt that his family circumstances would allow him to do so, he moved into Denver so he would be in compliance with the residency rule. In September 1990, his wife moved to Denver with him. While claimant's son remained in the Littleton home, claimant placed it on the market for sale.

In September 1990, pursuant to an anonymous tip, the Department instigated an investigation into claimant's residency. After two hearings, at which claimant explained his past and present residence situations, claimant was terminated for, *inter alia*, violation of the residency rule. Claimant's supervisors valued claimant as a superior employee and "hoped" his present compliance with the rule would be considered. The Manager also terminated claimant for falsifying his residency certificates during the time he lived in Littleton. Claimant had claimed a Denver address on his address certifications even during the time he had lived in Littleton.

After a hearing on claimant's claim for unemployment benefits, the hearing officer found that charter provisions which impose residency requirements on city employees are to be viewed as a legitimate exercise of authority by a municipality. However, he also ruled that, for purposes of a claim for unemployment benefits, such an ordinance or charter provision must be governed by the unemployment insurance statutes and viewed as an employer rule or policy.

With regard to the issue of the residency rule, the hearing officer then found that claimant did not meet the requirement of residing in the City within nine months of his hiring date. He further found, however, that he had no evidence before him that the City was seriously damaged by claimant's violation.

The hearing officer recognized the policy reasons for the residency rule, but he found that, as to this particular claimant, there was no showing that the Denver community was seriously damaged with regard to the generalized policies. He found that claimant was considered to be a superior worker by his supervisors and was making a contribution to the City. Furthermore, claimant's supervisors did not want claimant to be terminated. The hearing officer found that claimant was in compliance with employer's rules and policies at the time of his termination and that no damage to employer was shown.

With regard to the falsification issue, the hearing officer found that the falsification rule was vague as to its application and did not specifically seem to consider falsification of actual personnel records of the employer. In light of these findings, the hearing officer concluded that claimant was entitled to a full award of benefits pursuant to § 8–73–108(4), C.R.S. (1986 Repl.Vol. 3B).

The Panel reversed stating that the hearing officer had found that claimant was aware of employer's residency rule and that the findings supported the conclusion that claimant's violation of these rules was volitional. Consequently, citing *Denver v. Industrial Commission*, 666 P.2d 160 (Colo.App.1983), the Panel concluded that claimant was at fault for his separation and disqualified him pursuant to § 8–73–

108(5)(e)(VII). The Panel did not address the falsification issue.

■ Claimant is not here contesting his discharge, rather his contention is that the findings of the Panel do not support the application of § 8–73–108(5)(e)(VII). We agree.

Under § 8–73–108(5)(e)(VII), an employer is not to be charged for unemployment benefits if the separation from employment occurs because of:

Violation of a statute or of a company rule which resulted or could have resulted in serious damage to the employer's property or interests or could have endangered the life of the worker or other employees....

Claimant argues that, before a claimant may be disqualified from benefits pursuant to § 8–73–108(5)(e)(VII), three findings must be made. The first is that a statute or a company rule existed. The second is that a violation of the statute or company rule occurred. The last is that the violation of the statute or company rule resulted or could have resulted in serious damage to employer's property or interests. Pointing to the hearing officer's findings that the career service rule regarding falsification of records did not appear to apply to claimant's situation and that employer had not shown serious damage to its interests by virtue of any violation of the residency rule by claimant, claimant argues that § 8–73–108(5)(e)(VII) cannot be considered applicable to him.

The Panel did not set aside any of the pertinent findings of the hearing officer as being contrary to the evidence. Instead, the Panel concluded that claimant acted volitionally and, therefore, was at fault for his separation and, hence, ruled that, pursuant to § 8–73–108(5)(e)(VII), claimant was not entitled to unemployment compensation benefits. We agree with claimant that the Panel erred in disqualifying him pursuant to this section, as the requisite findings for the application of § 8–73–108(5)(e)(VII) were lacking. Consequently, we set aside that portion of the Panel's order which disqualified claimant pursuant to § 8–73–108(5)(e)(VII).

In so doing, we note and reject the Panel's analysis on review that the damage or possibility of damage required by § 8–73–108(5)(e)(VII) is presumed by the purpose and intent underlying the residency requirements. The Panel argues that because the residency rule has withstood a constitutional challenge and because our supreme court has recognized that the beneficent policies and purposes of the rule are to provide for the further betterment of a municipality, *see Denver v. State,* 788 P.2d 764 (Colo.1990), any violation of the rule should result in a presumption of harm to employer's interests. We disagree.

Whether an employee was discharged in accordance with particular employer-generated guidelines is an issue quite distinct from the question of whether an employee's conduct should disqualify the employee from receiving unemployment compensation benefits. The determination of eligibility for unemployment compensation benefits, once established, and the requisite factors for disqualification are matters within the province of the General Assembly. *Gonzales v. Industrial Commission,* 740 P.2d 999 (Colo.1987).

Here, we agree with the hearing officer that, for purposes of determining an employee's entitlement to unemployment compensation benefits, the residency rule must be treated equally with any other statute or employer rule. Almost every employee rule is designed, as was the residency rule, to provide for the betterment of the workplace. The General Assembly has declared that, if an employee is to be denied benefits for violating a statute or company rule, then such violation must, *inter alia,* result in serious damage, or a possibility thereof, to employer's property or interests before the employee may be denied benefits.

We are unaware of any legal or policy reason to exempt the City from demonstrating serious damage, or the possibility thereof, to its property or interests if one of its employees is to be denied benefits pursuant to § 8–73–108(5)(e)(VII) for violating the residency rule. We therefore reject the Panel's argument that serious harm

must be presumed from a violation of the residency rule.

Claimant also contends the Panel erred in determining that the hearing officer's findings supported the conclusion that he acted volitionally and therefore was at fault for his separation. Claimant argues that the Panel erroneously relied on *Denver v. Industrial Commission, supra,* in concluding that he was at fault. Because the Panel's order on this point is ambiguous, we remand for clarification by the Panel of its conclusions.

Both the City and Panel appear to argue on review that the case of *Denver v. Industrial Commission, supra,* establishes a rule, as a matter of law, that a knowing and voluntary breach of the residency rule constitutes fault on the part of the employee sufficient to disqualify him from the receipt of unemployment benefits. We do not find the ruling of that case to be so broad.

Initially, we note that that case was decided under § 8–73–108(8), C.R.S., now substantially recodified as § 8–73–108(5)(e)(IV), C.R.S. (1991 Cum.Supp.), rather than § 8-73-108(5)(e)(VII). The former revision does not require a finding of severe damage to employer's interest or property. Furthermore, that case concerned an employee who quit rather than one who was discharged. Hence, we do not read *Denver v. Industrial Commission, supra,* as determining that any violation of the residency requirement constitutes fault as a matter of law.

■ To the contrary, we conclude that the determination whether a claimant is at fault for a separation from employment because of a violation of the residency requirement must be determined on a case-by-case basis, with due consideration given to the totality of the circumstances in each particular situation. *See Eckart v. Industrial Claim Appeals Office,* 775 P.2d 97 (Colo.App.1989); *Zelingers v. Industrial Commission,* 679 P.2d 608 (Colo.App.1984).

It is unclear from the Panel's order whether it, in reliance on *Denver v. Industrial Commission, supra,* concluded in error that any violation of the residency rule

constituted fault on the part of an employee and that claimant, therefore, was at fault or whether the Panel concluded that the findings of the hearing officer independently supported a finding of fault, given the totality of the circumstances. Furthermore, the Panel did not address the issue of falsification of records as relevant to the residency issue. Consequently, if, on remand, the Panel determines that the fault of claimant is still an issue, it must clarify the basis for its conclusion.

That portion of the order disqualifying claimant from the receipt of benefits pursuant to § 8–73–108(5)(e)(VII) is set aside, and the cause is remanded to the Panel for further proceedings consistent with this opinion.

PIERCE and REED, JJ., concur.