24CA1235 LeRoy v ICAO 01-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1235
Industrial Claim Appeals Office of the State of Colorado
DD No. 9779-2024

---

Andrew LeRoy,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and University of Colorado,

Respondents.

---

ORDER SET ASIDE AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE YUN
Harris and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

---

Livelihood Law, LLC, David Lichtenstein, Denver, Colorado, for Petitioner

No Appearance for Respondents

¶ 1    In this unemployment benefits case, claimant, Andrew LeRoy, seeks review of a final order of the Industrial Claim Appeals Office (the Panel). The Panel affirmed the hearing officer's decision disqualifying LeRoy from receiving benefits based on his job separation from the University of Colorado (CU). We set aside the order and remand to the Panel with instructions for further proceedings consistent with this opinion.

## I.    Background

¶ 2    CU employed LeRoy as the head coach of the men's and women's ski teams and discharged him for making inappropriate comments to female student-athletes in violation of CU's policies. When LeRoy applied for unemployment benefits, a deputy for the Division of Unemployment Insurance determined that LeRoy was disqualified from receiving benefits under section 8-73-108(5)(e)(VII), C.R.S. 2024 (precluding benefits for terminations based on a violation of a statute or of a company rule which resulted or could have resulted in serious damage to the employer's property or interests).

¶ 3    LeRoy requested a hearing on the deputy's determination. At the hearing, Kelly Leandro, CU's Assistant Director of Employee

1

Relations, testified that CU terminated LeRoy "for a pattern of unacceptable and inappropriate comments that were interpreted as sexual in nature directed at student athletes, and the department determined that to be a violation of the employment agreement that Mr. Leroy signed on April 6th, 2021." She further testified that multiple complaints about LeRoy's behavior were filed with CU's Office of Institutional Equity and Compliance (OIEC). Leandro also testified that the first set of complaints occurred in October 2022, the second set of complaints occurred in January 2023, and the complaints were made by different individuals.

¶ 4    Leandro testified that after the first complaints were made in October, CU issued a letter of reprimand to LeRoy on October 13, 2022. That letter stated that he "ha[s] been making comments to female students that were interpreted as sexual in nature," that he "has created an environment in which [his] female athletes feel uncomfortable," and that "[t]his . . . serves as a formal reprimand for your failure to adhere" to CU's policy and code of conduct. The letter also documented that LeRoy had received educational training and warned that "you are hereby notified that any further issues may result in action up to and including termination of your

2

employment with the University of Colorado Boulder." Leroy's signature appears at the bottom of the letter, where he acknowledged that he "received and underst[ood] the Letter of Reprimand dated October 13, 2022."

¶ 5    On January 20, 2023, according to Leandro, CU placed LeRoy on administrative leave after receiving a second set of complaints. While she stated she could not disclose the specifics of those complaints, she testified that "the nature of the complaints w[as] the same" — involving "the same pattern of unacceptable and inappropriate comments that were interpreted as sexual in nature" but "from different reporting parties."

¶ 6    Mindy Sclaro, CU's Assistant Athletic Director for Academic Services, was LeRoy's immediate supervisor. She testified that in early October, she received complaints from two female student-athletes concerning LeRoy's behavior. The first individual complained that LeRoy conducted a Zoom meeting with several female student-athletes, some of whom did not have their cameras on. LeRoy told the students to turn on their cameras and said, "I want to see your pretty faces." Another student-athlete separately reported this incident to Sclaro, adding that LeRoy also asked one

of the students, "What's up, good looking?" and said, "I don't want to be the last to know if you and your boyfriend break up." Sclaro then testified that she personally received two reports regarding comments that LeRoy allegedly made while traveling with a student-athlete in a van around January 19, 2023. She testified that the complainants reported that LeRoy made a sexual comment about his wife and "asked a student what her favorite sexual position was."

¶ 7 During LeRoy's testimony, the hearing officer asked him if he was aware of CU's policy about unprofessional conduct, and LeRoy responded that he was. When asked why he received the letter of reprimand, he responded, "[B]ecause of information received by the athletic department or some student athletes for comments I had made." The hearing officer then asked, "Did you make those comments?" LeRoy responded, "I did make the comments leading up to the letter of reprimand, and I was made aware of those comments in the meeting with OIEC." The hearing officer also asked, "Were you aware that your employment, job position was at risk of being terminated after that letter of reprimand?" And LeRoy

answered, "I was." However, LeRoy denied making any inappropriate comments after receiving the letter of reprimand.

¶ 8     Following the hearing, the hearing officer affirmed the deputy's decision, modifying the disqualifying subsection to section 8-73-108(5)(e)(XIV) (precluding benefits for terminations based on rude, insolent, or offensive behavior not reasonably to be countenanced by a customer, supervisor, or fellow worker). He first determined that he could consider the CU employees' hearsay testimony about LeRoy's comments to female student-athletes. He then found that LeRoy "was at fault for the separation from this employment" because he "made inappropriate comments to female student-athletes that were sexual in nature" even after being warned that his job was at risk of termination "if another similar incident happened again."

¶ 9     LeRoy appealed the hearing officer's decision to the Panel, which set aside the decision and remanded for further findings. The Panel agreed with LeRoy's argument that the hearing officer had not made specific findings concerning the probative value of hearsay evidence. The Panel noted that, under section 8-74-106(1)(f)(II), C.R.S. 2024, hearsay evidence may be considered

in unemployment hearings if it is sufficiently probative. The Panel remanded for additional findings as to the probative value of hearsay statements and "a new decision that is consistent with this order."

¶ 10    On remand, the hearing officer issued a corrected decision setting forth additional findings regarding complaints that CU received from female student-athletes in January 2023 about inappropriate comments that LeRoy allegedly made. LeRoy again appealed to the Panel, which again set aside the decision and remanded to the hearing officer. The Panel determined that evidence offered to prove that LeRoy made the January comments "was *not* sufficiently probative and thus the hearing officer should *not* have relied upon it." But the Panel remanded the case for the hearing officer to determine the proximate cause of the job separation, stating as follows:

> [I]f the hearing officer's proximate cause finding *only* includes the alleged statements after the letter of reprimand, the claimant would not be at fault for the separation and would be entitled to benefits pursuant to § 8-73-108(4), C.R.S. However, since a claimant is entitled to benefits if he is unemployed through "no" fault of his own, an award is not appropriate if he is at fault for

one or some of the separate reasons for discharge. Section 8-73-108(1)(a). Consequently, if the hearing officer's proximate cause finding includes *both* the earlier comments *and* the later comments, the claimant would be at fault for the separation . . . .

¶ 11 After the case was remanded, the hearing officer issued a new decision holding that LeRoy was at fault for his job separation. Specifically, the hearing officer concluded that "[CU] discharged [LeRoy] because he made unprofessional and sexual comments to female athletes in early October 2022 and because later, [CU] received reports from student-athletes that [LeRoy] made sexually inappropriate comments." LeRoy again appealed to the Panel, arguing that "the sole consequences of the earlier comments were the October reprimand and training, not termination; thus[,] the earlier comments could not be a proximate cause of the discharge." The Panel rejected LeRoy's argument and ultimately affirmed the hearing officer's decision because LeRoy was terminated in part for his "rude, insolent, or offensive" comments in October 2022. Thus, the Panel concluded that LeRoy was not entitled to benefits because he was "at fault for one or some of the separate reasons for his discharge."

7

## II.    Analysis

¶ 12    In this appeal, LeRoy urges us to set aside the Panel's order because the record does not support the hearing officer's conclusion that LeRoy's October 2022 comments were a proximate cause of his termination.  We agree.

### A.    Legal Principles and Standard of Review

¶ 13    We may only set aside the Panel's decision if the factual findings are not supported by substantial evidence, if the factual findings do not support the legal conclusion, or if the decision is erroneous as a matter of law.  § 8-74-107(4), (6), C.R.S. 2024; *Yotes, Inc. v. Indus. Claim Appeals Off.*, 2013 COA 124, ¶ 10.  Substantial evidence is "probative, credible, and competent, of a character which would warrant a reasonable belief in the existence of facts supporting a particular finding."  *Rathburn v. Indus. Comm'n*, 566 P.2d 372, 373 (Colo. App. 1977).

¶ 14    An individual is disqualified from receiving unemployment benefits if the separation from employment occurred as a result of "[r]udeness, insolence, or offensive behavior of the worker not reasonably to be countenanced by a customer, supervisor, or fellow worker."  § 8-73-108(5)(e)(XIV).  In determining whether this

subsection applies, we consider "whether a reasonable person in the position of the fellow worker and others would have found [the] claimant's action to be so rude, insolent, or offensive as not to be countenanced." *Davis v. Indus. Claim Appeals Off.*, 903 P.2d 1243, 1245 (Colo. App. 1995).

¶ 15　　The disqualifying provisions of section 8-73-108(5)(e) "must be read in light of the express legislative intent set forth in [section 8-73-108(1)(a)] to provide benefits to those who become unemployed through 'no fault' of their own." *Cole v. Indus. Claim Appeals Off.*, 964 P.2d 617, 618 (Colo. App. 1998). "'[F]ault' is a term of art which is used as a factor to determine whether the claimant or the employer is responsible overall for the separation from employment." *Id.* "In this context, 'fault' has been defined as requiring a volitional act or the exercise of some control or choice by the claimant in the circumstances resulting in the separation such that the claimant can be said to be responsible for the separation." *Id.*

¶ 16　　"[W]hether a claimant is at fault for a separation from employment . . . must be determined on a case-by-case basis, with due consideration given to the totality of the circumstances in each

particular situation." *Morris v. City & Cnty. of Denver*, 843 P.2d 76, 79 (Colo. App. 1992).

## B. Discussion

¶ 17 LeRoy argues that, although he "received a letter of reprimand in October 2022 for comments he admittedly made, he was terminated more than three months later for hearsay comments he denied making." LeRoy explains that the Panel already determined that Sclaro's testimony regarding LeRoy's comments to a female student-athlete in January 2023 were inadmissible hearsay and that the hearing officer should not have relied on it. Therefore, he contends that "it is entirely illogical that [CU] would issue [LeRoy] a letter in October 2022 cautioning that further issues may result in action up to and including termination, and then terminate him months later despite the absence of any evidence supporting that termination."

¶ 18 A claimant's entitlement to benefits is determined by the reason for his separation from employment. *Eckart v. Indus. Claim Appeals Off.*, 775 P.2d 97, 99 (Colo. App. 1989). To ascertain the reason for separation, "the trier of fact must evaluate the totality of the evidence and determine the motivating factors in the employee's

separation and then determine whether, based upon those factors, [the] claimant is entitled to, or disqualified from, the receipt of benefits." *Id.*

¶ 19    We agree with LeRoy that the record does not support the hearing officer's finding that his comments in October 2022 were a proximate cause of his job separation. It is undisputed that LeRoy was issued a letter of reprimand and required to undergo educational training because he made inappropriate comments to female student-athletes in October. But he was not terminated as a result of those comments. Instead, the letter of reprimand warned LeRoy that "you are hereby notified that any further issues may result in action up to and including termination of your employment." Because no admissible evidence was presented regarding "any further issues," the record does not support the hearing officer's finding that LeRoy's October comments were the "motivating factors" for his job separation three months later.

¶ 20    We therefore conclude that the Panel erred in affirming the hearing officer's finding that LeRoy's "rude, insolent, or offensive" comments in October 2022 were a proximate cause of his job separation. Because this finding is not supported by substantial

11

evidence in the record, we must set aside the Panel's ultimate legal conclusion that LeRoy was at fault for his job separation.

## III.   Disposition

¶ 21    The Panel's order is set aside, and the case is remanded to the Panel for further proceedings consistent with this opinion.  On remand, the Panel should determine, consistent with this opinion, whether the hearing officer's findings and the evidence support an award of unemployment benefits.  *See M & A Acquisition Corp. v. Indus. Claim Appeals Off.*, 2019 COA 173, ¶ 26 (remanding to the Panel to consider whether the findings and evidence would support disqualifying a claimant from benefits); *Indus. Claim Appeals Off. v. Softrock Geological Servs., Inc.*, 2014 CO 30, ¶ 19 (remanding the case with instructions to return it to the Panel for "proceedings consistent with this opinion").

JUDGE HARRIS and JUDGE KUHN concur.