25CA0164 Thompson v ICAO 05-15-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0164
Industrial Claim Appeals Office of the State of Colorado
DD No. 28897-2024

---

Michael Thompson,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Troys Vujcich Automative Inc.,

Respondents.

---

ORDER SET ASIDE AND CASE
REMANDED WITH DIRECTIONS

Division A
Opinion by JUDGE TAUBMAN*
Román, C.J., and Martinez*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

---

Michael Thompson, Pro Se

No Appearance for Respondent Industrial Claim Appeals Office of the State of Colorado

Troy Vujcich, Authorized Representative, Pueblo, Colorado, for Respondent Troys Vujcich Automative Inc.


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Michael Thompson appeals the denial of his application for unemployment compensation benefits. We set aside the order and remand with directions to return the case to the hearing officer for entry of an order awarding unemployment compensation benefits.

I.    Overview

¶ 2    Thompson worked for Troy's Vujcich Automotive, Inc.[1] as an auto technician for three years. The relevant events surrounding Thompson's job separation occurred between September and November 2023. It is undisputed that Thompson informed the owner, Troy Vujcich, that he had carpal tunnel surgery scheduled for September 6 and would be physically unable to work in his technician position for six weeks.

¶ 3    Vujcich contends that Thompson quit his employment before the surgery, in a conversation on September 1. Thompson acknowledges that he spoke with Vujcich about his upcoming surgery, but that he did not quit. Instead, Thompson alleges that

---

[1] It appears that this entity is appearing without representation by an attorney or a showing that it is entitled to do so under section 13-1-127 (2), C.R.S. 2024. Because the answer brief is only two paragraphs and contains no new legal issues, we determine that we may disregard this apparent error.

the day before the surgery, Vujcich agreed to keep his job open. The parties dispute whether Thompson was then on an unpaid medical leave of absence. The parties also dispute whether another conversation took place in November where Vujcich discharged Thompson after Thompson told him he was medically cleared to return to work.

## II.    Procedural Background

¶ 4     Thompson applied for unemployment compensation benefits, but his application for benefits is not in the record. On February 5, 2024, a deputy for the Division of Unemployment Insurance granted his application under section 8-73-108(4)(a), C.R.S. 2024. Under that provision, an individual separated from a job must be given a full award of benefits if the individual was laid off due to a lack of work. Vujcich appealed the deputy's determination, asserting that Thompson quit his employment and was not laid off. A series of hearings followed.

### A.    First Hearing

¶ 5     After a June 2024 hearing (the first hearing), the hearing officer affirmed the deputy's determination, but did not specifically rely on subsection (a) of section 8-73-108(4). Instead, the hearing

officer found that Thompson was generally entitled to benefits under section 8-73-108(4), which provides numerous grounds supporting a benefit award, including a physical inability to do the work.

¶ 6　　The hearing officer found that Vujcich discharged Thompson during a phone call on November 15, 2023, while Thompson was recovering from carpal tunnel surgery. The hearing officer also found that, contrary to Vujcich's testimony, Thompson did not quit his job on September 1, 2023. Therefore, the hearing officer determined that Thompson was not at fault for the job separation, and that Vujcich discharged him while he was still employed but physically unable to work.

### B.　First Remand

¶ 7　　Vujcich appealed to the Industrial Claim Appeals Office (the Panel), which set aside and remanded the hearing officer's decision for further proceedings. The Panel noted that the claim file, entered into the record as Exhibit AA, did not include Thompson's initial filing for benefits. Because the hearing notice provided that "before the hearing, you must disclose everything you plan to talk about related to the issues under appeal," the Panel determined that

3

Thompson "failed to provide any information related to being laid off for a lack of work or his contention that he was fired."[2]

¶ 8    The Panel thus concluded that the factual issues of being laid off for a lack of work or being fired "were not properly disclosed prior to the hearing." The Panel then remanded with instructions for the hearing officer to permit Thompson "to present evidence sufficient to determine if [Thompson] has good cause for his failure to disclose the circumstances of being laid off for a lack of work."

### C.    Second Hearing

¶ 9    Another hearing was held before the same hearing officer in August 2024 (the second hearing). Thompson testified that he initially filed his unemployment compensation benefits claim by phone. During that phone call, Thompson said, he told the Division representative that on November 15, he received a call from Vujcich, who said Thompson no longer had a job and told him to gather his tools from the employer's premises.

---

[2] We believe this is incorrect. During the first hearing, the hearing officer admitted documents submitted by both parties, and included Thompson's documents, as well as a recording, as his Exhibit A, and Vujcich's two documents as Exhibit 2. The documents and recording in Exhibit A provided information to support Thompson's argument that he believed he had been laid off or fired.

4

¶ 10    The hearing officer concluded that Thompson had shown good cause for not previously disclosing his contention that he separated from this employment due to a discharge or for lack of work. The hearing officer observed that "for reasons unknown" to either Thompson or Vujcich, Thompson's "original job separation information" that he provided by phone to the representative "was not sent to either party or to the hearing officer." The hearing officer concluded that this constituted administrative error by the Division, which is one of the factors to be applied in a good cause analysis.

¶ 11    The hearing officer then took further testimony from both Thompson and Vujcich and considered additional evidence submitted for the second hearing. The hearing officer again concluded that "contrary to the employer's testimony," Thompson "did not quit this job on September 1," and that Vujcich discharged Thompson "in a phone call on November 15, 2023, for the reasons testified to by [Thompson]." Therefore, the hearing officer again determined that Thompson was entitled to an award of benefits under section 8-73-108(4).

## D. Second Remand

¶ 12    Vujcich appealed to the Panel, which again set aside the hearing officer's order and remanded for further proceedings. The Panel determined that the hearing officer had "failed to follow [the] remand instructions." The Panel recognized that "any information that [Thompson] may have given to the Division regarding his separation . . . was not included in the claim file material." The Panel then held that, because the notice of the first hearing required Thompson to provide everything he "planned to talk about" during the hearing, he was required to "resubmit information he apparently told the Division."

¶ 13    The Panel remanded again, specifically instructing for the hearing officer to question Thompson about whether he had "read the back of the hearing notice" and why he did not "resend" information that was "not in the claim file."

## E. Third Hearing

¶ 14    A third hearing was then held before a new hearing officer (the new hearing officer). The new hearing officer acknowledged that there had been two prior hearings in the matter, and that the Panel had remanded for the "taking of additional specific testimony as to

6

a good cause issue." The new hearing officer explained that "this is not a new hearing," and advised that "the testimony and evidence that was submitted in the prior hearings are included in the record of this hearing." The new hearing officer also said that he had listened to the recordings of both hearings and had reviewed the evidence in the record, and would be taking no additional testimony on the "circumstances of [Thompson's] separation from employment, as all of that testimony has already been provided" in the prior hearings.

¶ 15 The new hearing officer then asked Thompson questions regarding the good cause factors, as directed by the Panel. Those questions included whether Thompson had received the hearing notice, had read the notice, and had understood the directions. Thompson answered in the affirmative. The new hearing officer then asked, "was there anything that prevented you from filing any type of statements . . . that would indicate why you believe that you were separated from employment?" Thompson responded, "Oh, I thought I had put that information in there." The new hearing officer then asked whether he understood that he needed to file a statement as to whether he was discharged or laid off. Thompson

responded, "I thought I filed that with the evidence I sent in though. There was a recording and a bunch of paperwork that I filed as evidence."

¶ 16 The new hearing officer again asked if Thompson had read the directions on the hearing notice, and Thompson responded that he had. The new hearing officer then told Thompson that "the [Panel] is indicating that you did not announce that there was a new issue that was being heard in this matter. The issue that was announced in the hearing was that you were laid off from this employment. You then stated you were discharged, which is considered a new issue." The new hearing officer told Thompson, "that issue was not announced or you did not present any information on that issue prior to the [first hearing]."

¶ 17 Thompson then attempted to explain that he had uploaded documents for the first hearing and had emailed them to Vujcich. But the new hearing officer said, "Okay. Stop there, Mr. Thompson." The new hearing officer then determined that Thompson "does not have good cause for announcing the new issue or for notifying the employer or the hearing department of the new issue, as [he] did receive timely notice of the need to act."

¶ 18    The new hearing officer issued a decision concluding that Thompson was not entitled to unemployment compensation benefits because he had quit for personal reasons, citing section 8-73-108(5)(e)(XXII).  The new hearing officer then made findings that contradicted the first hearing officer's findings, including that "on or about September 1," the parties met, and Thompson told Vujcich he was resigning.  The new hearing officer found that "Vujcich accepted the resignation" at that time, and only contacted Thompson in November to discuss retrieving his tools.

¶ 19    After weighing the good cause factors, the new hearing officer found that "there were no circumstances that prevented [Thompson] from taking timely action to file a statement regarding what he believed the circumstances of his separation from employment were."  Therefore, the new hearing officer concluded that Thompson had failed to show good cause and that he was disqualified from receiving benefits.

## F.    Final Panel Order

¶ 20    Thompson appealed the hearing officer's decision, contending that he "did upload nine documents and one audio file for the original hearing.  I am not sure why the claims office does not see

9

this." He also argued that the new hearing officer was "biased, cut me off while I was speaking, and did not allow for me to state that I uploaded the documents as per the back page of the notice." He then attached emails that showed files he had submitted in May 2024 before the first hearing.

¶ 21 The Panel affirmed the new hearing officer's decision, concluding that "there were no administrative errors by the Division in this matter." The Panel acknowledged that Thompson contended that the nine documents he uploaded, and the audio file, were "evidence of his factual contentions concerning his separation." However, the Panel said it found "no error in the hearing officer's good cause determination." The Panel disagreed with Thompson's contention that the hearing officer had cut him off. The Panel then determined that the new hearing officer's recitation of the facts surrounding the job separation also contained no error.

¶ 22 The Panel acknowledged the finding that Thompson had "worked for the employer from August 8, 2020 through November 15, 2023," but said that "we rely on the [new] hearing officer's findings that [Thompson] resigned during a meeting on September

1."  The Panel affirmed the denial of benefits on the ground that Thompson had quit his employment.

### III.    Legal Principles and Standard of Review

¶ 23    We may set aside the Panel's decision if the factual findings are not supported by substantial evidence, if the factual findings do not support the legal conclusion, or if the decision is erroneous as a matter of law.  § 8-74-107(4), (6), C.R.S. 2024; *Yotes, Inc. v. Indus. Claim Appeals Off.*, 2013 COA 124, ¶ 9, 310 P.3d 288, 290. Substantial evidence is that quantum of probative evidence that a rational fact finder would accept as adequate to support a conclusion, without regard to the existence of conflicting evidence.  *Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 414 (Colo. App. 1995).

¶ 24    The disqualifying provisions of section 8-73-108(5)(e) "must be read in light of the express legislative intent set forth in [section 8-73-108(1)(a)] to provide benefits to those who become unemployed through 'no fault' of their own."  *Cole v. Indus. Claim Appeals Off.*, 964 P.2d 617, 618 (Colo. App. 1998).  "'[F]ault' is a term of art which is used as a factor to determine whether the claimant or the

employer is responsible overall for the separation from employment." *Id.*

¶ 25 "[W]hether a claimant is at fault for a separation from employment . . . must be determined on a case-by-case basis, with due consideration given to the totality of the circumstances in each particular situation." *Morris v. City & Cnty. of Denver*, 843 P.2d 76, 79 (Colo. App. 1992).

## IV. Thompson's Contentions

¶ 26 Representing himself on appeal, Thompson contends that:

- The first hearing officer's award of unemployment compensation benefits was correct, and he provided enough information at the first hearing to support his contentions.

- One of the exhibits he submitted for the first hearing was an audio recording of his conversation with Vujcich on September 5, and the recording, which has "yet to be reviewed in this matter," shows that Vujcich told Thompson that his job would be held open while he was out on medical leave for surgery.

12

- The evidence he submitted to prove that he was out on medical leave after the surgery was not considered.

## V. Analysis

¶ 27    After a thorough review of the record, we conclude that we must set aside the Panel's determination as not supported by substantial evidence in the record and erroneous as a matter of law.

### A. Good Cause

¶ 28    At the outset, we find error in the Panel's conclusion that Thompson failed to show good cause for not "announcing" a new issue about the reasons he asserted for his discharge. To the contrary, we agree with Thompson that he sufficiently explained during his testimony the reasons he thought he was laid off or discharged, and his testimony was supported by the audio recording and documents he submitted to the division and to Vujcich before the first hearing.

¶ 29    Vujcich admitted at the first hearing that he had received the documents and the recording. The recording was admitted into evidence as part of Thompson's Exhibit A, but it was not played at the hearings, and neither hearing officer described the contents of the recording. The first hearing officer allowed Thompson to testify

13

as to some of the recording's contents, however, and ultimately found that Vujcich agreed to hold Thompson's job open during the surgery, which supports Thompson's argument that he was then laid off or discharged in November.

¶ 30    We note that Vujcich objected to the admission of the recording, but was overruled, and that the Panel, in its first remand order, held that the recording had been properly admitted into evidence.   The Panel noted that, because Thompson emailed the recording to Vujcich the night before the hearing, Thompson had complied with the applicable regulations.

¶ 31    Further, Thompson testified during the second hearing that when he applied for benefits, he told the Division representative that Vujcich had called him on November 15 to tell him to come get his tools, that his services were no longer needed, that Vujcich was going to take over his bay, and there was no longer a place for him to work.   Thompson testified that, "in essence, I could see how that means if I'm not going to have a place to work, that could be letting me go, I could see that as a way of being laid off."   The first hearing officer credited this testimony and found that Thompson had

14

sufficiently explained that he had been laid off for a lack of work before applying for benefits.

¶ 32  Given that the Division erred in not having a complete claim file, we disagree that Thompson, who testified as to his conversation with the Division to apply for benefits, somehow is to blame for the lack of written documentation in the claim file regarding his reason for discharge. We thus determine that the Panel erred when it concluded that Thompson had failed to show good cause for his alleged "failure to disclose everything he planned to talk about related to the issue on appeal."

¶ 33  We determine that the Panel's conclusion on the good cause issue must be set aside. In the Panel's first remand order, it instructed the first hearing officer to determine the good cause issue, and, if the hearing officer determined that "good cause does exist, he shall permit the employer to cross-examine [Thompson] about the issue and present relevant evidence concerning the issue, subject to [Thompson]'s cross-examination and rebuttal." That is exactly what the hearing officer did. During the second hearing, he heard further testimony from both parties and allowed cross-examination and rebuttal. The Panel must review a hearing officer's

15

decision based on the evidence in the record previously submitted in the case. *Alfaro v. Indus. Claim Appeals Off.*, 78 P.3d 1147, 1149 (Colo. App. 2003).

## B. Conflicting Evidence

¶ 34    The new hearing officer did not take any evidence regarding the job separation, but limited the testimony to the good cause issue. All the evidence concerning the job separation was admitted during the first two hearings. Based on that evidence, the first hearing officer twice concluded that Thompson was entitled to benefits. The second hearing officer made the opposite conclusion. We cannot determine if the second hearing officer did so because he determined he could not consider *any* of Thompson's evidence due to the good cause issue, and instead relied only on Vujcich's evidence. In any event, he did not explain why he found Vujcich's testimony more credible when the first hearing officer twice had discredited it.

### 1. Recording

¶ 35    Thompson argues on appeal that his recording, "which has yet to be reviewed in this matter" supports his testimony that he did not quit on September 1. We agree that it is unclear whether either

hearing officer listened to the recording. Because it is in the record, we have listened to the recording and agree that (1) the recorded conversation occurred the day before surgery (September 5), not September 1; and (2) Vujcich clearly stated, about a minute into the recording, "but if you want me to hold the job open, I will."

¶ 36 In the recording, the parties seemed to agree that a "service writer" position would not be open, but the parties also discussed the possibility of Thompson returning to a "wrenching" job after surgery. The recording supports the undisputed testimony that in some prior conversations, Thompson expressed to Vujcich his frustration with his upcoming surgery, his physical inability to do the tech job, and whether he could instead work in the service writer job. In the recording, Vujcich advised there was not currently a service writer position available, and that he did not anticipate "firing one of his own kids" who held that position. During the recording, Thompson did not state that he was resigning or quitting his position.

### 2. Medical Leave of Absence

¶ 37 Thompson also contends that evidence considering his medical leave of absence was not considered. Specifically, he points

to a letter in the record as part of Exhibit A, on the employer's letterhead dated October 23, stating that Thompson was on a medical leave of absence beginning on September 6. While the parties disputed whether the signature on the letter belonged to Troy Vujcich or Tyler Vujcich, the shop manager, or whether the letter was a forgery, that issue was never resolved or addressed.

¶ 38    Also in evidence were screenshots of texts and a doctor's note demonstrating that Thompson had advised both Troy and Tyler Vujcich on November 9 that a doctor had cleared him to work without restrictions on December 4. Tyler responded, "great," and Troy responded, "nice," but then said he wanted to talk to Thompson before that. This issue also was never resolved.

### 3.    November 15 Phone Call

¶ 39    There is conflicting evidence in the record regarding phone records submitted during the second hearing and the parties' testimony concerning the November 15 phone call. At the first hearing, Vujcich testified that he "may have" called Thompson on November 15. The first hearing officer asked him, "what would be the purpose of you calling him on November 15th?" Vujcich responded:

18

> To come remove his toolbox from my business
> because he already knew that he was -- I let
> him go on the 9th, and he already knew that.
> But he didn't give me a date when he was
> going to bring his box in, and I had another
> guy starting right around that Friday. So
> that's why I wanted him to get his box out of
> here.

¶ 40    The first hearing officer then said, "I'm just a little confused by your testimony. He quit September first and you decided November ninth you're not bringing him back. I got a conflict there." Vujcich did not explain why he stated that he "let him go on the ninth" but instead again testified that Thompson had quit on September 1.

¶ 41    At the first hearing, Thompson's friend, Robert Madrid, testified that he was with Thompson at lunch on November 15 when he heard a conversation on Thompson's speaker phone in which Vujcich discharged Thompson that day. The first hearing officer credited that testimony.

¶ 42    During the second hearing, there was conflicting testimony as to whether the November 15 call came from Vujcich's personal line or the shop line, and whether the call was made by Vujcich or his son Tyler, who also testified at the second hearing. The first hearing officer asked Thompson who called him on November 15

19

from the shop number. Thompson replied, "Troy Vujcich." The first hearing officer then asked, "Did Tyler Vujcich call you from that same number that same day?" Thompson testified, "Absolutely not."

¶ 43 After hearing this testimony and reviewing the phone records, the first hearing officer was persuaded by Thompson's testimony that "he was discharged by the owner on November 15, 2023, during the owner's phone call to [Thompson]." And the hearing officer "was not persuaded by the employer's testimony that [Thompson] quit this job or that the owner did not speak to [Thompson] by phone on November 15, 2023."

### C. Substantial Evidence Standard

¶ 44 Under section 8-74-107, we must set aside a Panel's order if it is not supported by substantial evidence in the record. Evidence that is probative, credible, and competent, such that it warrants a reasonable belief in the existence of a particular fact without regard to contradictory testimony or inference, is considered substantial evidence. *Life Care Ctrs. of Am. v. Indus. Claim Appeals Off.*, 2024 COA 47, ¶ 14, 553 P.3d 905, 908. Mere conclusions thus do not suffice. *Wecker v. TBL Excavating, Inc.*, 908 P.2d 1186, 1188-89

20

(Colo. App. 1995) ("[E]vidence is not substantial if it . . . constitutes a mere conclusion."). We decide as a matter of law whether substantial evidence exists. *Pub. Serv. Co. of Colo. v. Pub. Utils. Comm'n*, 26 P.3d 1198, 1205 (Colo. 2001).

¶ 45 After a thorough review of the record, we conclude that substantial evidence does not support the Panel's ultimate legal conclusion that Thompson resigned his employment and was disqualified from receiving benefits. Therefore, we must set aside the Panel's order. We also determine that substantial evidence in the record supports an award of unemployment compensation benefits, for the reasons thoroughly explained in this opinion.

## VI. Disposition

¶ 46 We set aside the order and remand to the Panel with directions to return the case to the hearing officer for entry of an order awarding Thompson unemployment compensation benefits.

JUDGE ROMÁN and JUSTICE MARTINEZ concur.