25CA0260 McVaney v ICAO 07-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0260
Industrial Claim Appeals Office of the State of Colorado
DD No. 28749-2024

James McVaney,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado,

Respondent.

ORDER AFFIRMED

Division IV
Opinion by JUDGE GOMEZ
Freyre and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

James McVaney, Pro Se

No Appearance for Respondent

¶ 1     James McVaney appeals the denial of his application for unemployment compensation benefits.  We affirm.

## I.     Background

¶ 2     McVaney worked for Magnolia Road Inc. (Magnolia) as a farm manager.  In June 2024, McVaney and his supervisor, Ken Martin, discussed several issues regarding the company's planting schedule and whether Martin needed to hire additional help to assist with farming.  McVaney became upset because he thought Martin was going to replace him with another employee.  He then asked Magnolia's operations manager for a "severance" of $60,000 because he was "being replaced."

¶ 3     On June 11, Martin texted McVaney and referenced the severance request, asking McVaney, "Severance for what?  Why do you keep leaving the 1099s unattended?  Why are you not planting the ten-gallon pots?"  McVaney responded that their "working relationship [was] over" and asked Martin to "shoot me the name of your lawyer at this point."  Martin accepted this statement as McVaney's resignation.

¶ 4     McVaney applied for benefits, which were initially awarded based on the information he submitted.  Magnolia contested the

1

award and requested a hearing.  The hearing officer determined that McVaney was disqualified from receiving benefits under section 8-73-108(5)(e)(II), C.R.S. 2024, for quitting his employment because of dissatisfaction with a supervisor.  McVaney appealed to the Industrial Claim Appeals Office (the Panel), which affirmed.

## II.     Legal Principles and Standard of Review

¶ 5     Workers can receive unemployment compensation benefits only if they become unemployed through no fault of their own.  *See Debalco Enters., Inc. v. Indus. Claim Appeals Off.*, 32 P.3d 621, 623 (Colo. App. 2001).  Determining whether a claimant is at fault for an employment separation requires a case-specific consideration of the totality of the circumstances.  *Morris v. City & Cnty. of Denver*, 843 P.2d 76, 79 (Colo. App. 1992).  As relevant here, we will uphold the Panel's decision unless the findings of fact don't support the decision or the decision is erroneous as a matter of law.  § 8-74-107(6)(c)-(d), C.R.S. 2024.

## III.    Analysis

¶ 6     Section 8-73-108(5)(e)(II) disqualifies a claimant from benefits when the claimant quits due to dissatisfaction with a supervisor, with no evidence that the supervision was "other than that

reasonably to be expected in the proper performance of work." The hearing officer found that McVaney was angry because Martin posted a farm manager position after McVaney wasn't getting the work done. Martin believed that McVaney needed more assistance and possibly more supervision, but McVaney thought that Martin was hiring his replacement. The hearing officer determined that McVaney's "erroneous belief that he was being replaced does not constitute objectively unreasonable supervision or working conditions." The hearing officer also found that Martin reasonably interpreted McVaney's text message as a statement of resignation. The Panel concluded that the hearing officer's findings were supported by the record.

¶ 7    McVaney doesn't dispute that he sent the text message at issue, but claims that he only meant he was done "for that day." He asserts that he didn't mean that he quit, and instead contends that he was discharged. He also asserts the following issues in his brief:

- Disability discrimination and sexual harassment, which rendered the work environment objectively unreasonable and resulted in his constructive discharge;

- Violation of the Colorado Anti-Discrimination Act;

3

- Violation of his due process rights; and

- Failure of the hearing officer to consider certain evidence.

¶ 8     McVaney doesn't provide any arguments in his brief to support these issues, and this court generally doesn't consider assertions unsupported by any developed argument. *See Woodridge Condo. Ass'n v. Lo Viento Blanco, LLC,* 2020 COA 34, ¶ 44. Nevertheless, because McVaney is self-represented, "we liberally construe his filings while applying the same law and procedural rules applicable to a party represented by counsel." *Gandy v. Williams,* 2019 COA 118, ¶ 8.

¶ 9     First, like the Panel, we conclude that the evidence supports the hearing officer's determination that McVaney quit his employment and was not discharged. McVaney apparently relies on a letter of separation from Magnolia dated June 14 to prove he was discharged. That letter provided details about his last paycheck and gave him thirty days to vacate the Magnolia-owned property where he was living. McVaney testified that when he received the letter, he "was shocked" and "asked [Magnolia] to . . . reinstate [him], and . . . double [his] salary." But then he received a text from Martin expressing Martin's belief that he had quit.

¶ 10    At the hearing, Magnolia's human resource manager testified that she sent the letter of separation with the understanding that McVaney "had given his resignation basically effective immediately" on June 11.  She testified that the purpose of the letter was not to terminate his employment, but rather to confirm that his employment had already been terminated.

¶ 11    While the evidence before the hearing officer may have supported various inferences concerning the reason for McVaney's job separation, we conclude that substantial evidence supports the hearing officer's determination that McVaney quit his employment. "It is the hearing officer's responsibility, as trier of fact, to weigh the evidence, assess credibility, resolve conflicts in the evidence, and determine the inferences to be drawn therefrom." *Hoskins v. Indus. Claim Appeals Off.*, 2014 COA 47, ¶ 10.  Thus, we may not disturb the hearing officer's findings where, as here, they are supported by substantial evidence. *See id.*  And an employer who accepts an employee's unequivocal notice of resignation is entitled to rely on it without the risk of being charged for compensation benefits if the employee attempts to withdraw the resignation. *Cunliffe v. Indus. Claim Appeals Off.*, 51 P.3d 1088, 1089-90 (Colo. App. 2002).

¶ 12    Second, McVaney maintains that the hearing officer disregarded his testimony asserting disability discrimination and sexual harassment. Like the Panel, we reject that argument. At the hearing, McVaney testified that he informed Martin of a disability in April, and that Martin didn't engage in an interactive process with him about the disability as required by the Colorado Anti-Discrimination Act. McVaney also testified about an incident where a supervisor told him he needed to wear underwear in order to prevent unintentionally exposing himself at work. McVaney asserted that he felt "sexually harassed" in that situation.

¶ 13    From our review of the record, it appears that the hearing officer considered McVaney's testimony, but determined it wasn't relevant to whether McVaney voluntarily resigned his employment. It is true that a worker may be entitled to benefits after quitting due to unsatisfactory or hazardous working conditions under section 8-73-108(4)(c); *see also Rodco Sys. Inc. v. Indus. Claim Appeals Off.*, 981 P.2d 699, 701 (Colo. App. 1999) (Hazardous conditions are those "determined by the division to exist, that could result in a danger to the physical or mental well-being of the worker."). But the hearing officer weighed the competing factual evidence and

6

found, with record support, that McVaney resigned because he was dissatisfied with his supervision — not because of any alleged discrimination or harassment. And as the Panel noted, if the supervision is reasonably to be expected in the proper performance of the work, then disqualification is proper under section 8-73-108(5)(e)(II). *See Musgrave v. Indus. Claim Appeals Off.*, 762 P.2d 686, 688 (Colo. App. 1988) (noting that even though a supervisor could have used better practices, the supervisor's actions did not justify resignation).

¶ 14 Finally, McVaney contends that his due process rights were violated, apparently because he believes the hearing officer didn't review all of his exhibits. The hearing transcript indicates that McVaney's exhibits A through K were received into evidence. Only one exhibit was listed as entered when the hearing officer issued a decision in December 2024. However, the hearing officer issued a corrected decision in January 2025 listing all eleven of McVaney's exhibits. As the Panel noted, a corrected decision is issued under the applicable regulations when there is a typographical or clerical error, which appears to be the case here. From our review of the

record, it appears that the hearing officer did consider all of McVaney's exhibits, and there was no due process violation.

¶ 15 The hearing officer and the Panel determined that the proximate cause of McVaney's job separation was his choice to resign. Thus, he was not entitled to an award of benefits on a no-fault basis unless he established that his separation was essentially involuntary under the objective circumstances — which he did not do. *See Cole v. Indus. Claim Appeals Off.*, 964 P.2d 617, 619 (Colo. App. 1998) ("[T]he hearing officer did not make any evidentiary finding, implicitly or otherwise, that claimant was unable to continue working at the time of her resignation, nor would the record support any such finding.").

¶ 16 For these reasons, we discern no error in the Panel's determination that McVaney was disqualified from receiving unemployment benefits.

### IV. Disposition

¶ 17 The Panel's order is affirmed.

JUDGE FREYRE and JUDGE MEIRINK concur.