25CA0668 Scott v ICAO 10-30-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0668
Industrial Claim Appeals Office of the State of Colorado
DD No. 425-2025

Dorien Scott,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado,

Respondent.

ORDER AFFIRMED

Division I
Opinion by JUDGE J. JONES
Grove and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

Dorien Scott, Pro Se

No Appearance for Respondent

¶ 1     In this unemployment compensation benefits case, claimant, Dorien Scott, seeks review of a final order of the Industrial Claim Appeals Office (Panel). The Panel affirmed the hearing officer's decision disqualifying Scott from receiving benefits due to the circumstances of her separation from Safeway Stores Inc. (Safeway). We affirm.

## I.     Background

¶ 2     Safeway employed Scott as a cashier until it terminated her employment in November 2024. She applied for benefits with the Division of Unemployment Insurance (Division). A Division deputy determined that she wasn't entitled to benefits because she was responsible for her own termination based on her violation of Safeway's policy against confronting suspected shoplifters.

¶ 3     Scott appealed the deputy's decision and requested a hearing. The hearing officer affirmed the deputy's determination, finding that Safeway's policy prohibited employees from accusing someone of shoplifting or confronting a suspected shoplifter; Scott was trained on the policy when she began employment in 2021; the policy had not changed; and Scott violated the policy when she followed a customer out of the store and grabbed one of the bags he was

1

carrying. The hearing officer concluded that Scott was disqualified from receiving benefits under section 8-73-108(5)(e)(XX), C.R.S. 2025 (failure to meet job performance or other standards). The Panel affirmed the hearing officer's factual findings and legal conclusions.

## II.    Discussion

¶ 4    Scott asks us to overturn the disqualification determination, asserting that "critical facts and procedural discrepancies were not sufficiently considered." She contends that the hearing officer erroneously relied on "outdated training information," rather than "addressing the discrepancy in the training records." Specifically, she argues that she wasn't trained on the shoplifting policy when she was rehired in 2023 but was trained only when she first began employment in 2021. After carefully reviewing the record and applicable law, we affirm the Panel's decision disqualifying Scott from receiving benefits.

### A.    Standard of Review

¶ 5    We may set aside the Panel's decision only if (1) the Panel acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the factual findings don't support the

decision; or (4) the decision is erroneous as a matter of law. § 8-74-107(6), C.R.S. 2025. We are bound by the hearing officer's findings of fact if they are supported by substantial evidence in the record. § 8-74-107(4). We review de novo ultimate conclusions of fact and ultimate legal conclusions. *Harbert v. Indus. Claim Appeals Off.*, 2012 COA 23, ¶¶ 8-9.

### B. Applicable Law

¶ 6 A claimant's entitlement to benefits is determined by the reason for the separation from employment. *Debalco Enters., Inc. v. Indus. Claim Appeals Off.*, 32 P.3d 621, 623 (Colo. App. 2001). To ascertain the reason for separation, "the trier of fact must evaluate the totality of the evidence and determine the motivating factors in the employee's separation and then determine whether, based upon those factors, [the] claimant is entitled to, or disqualified from, the receipt of benefits." *Eckart v. Indus. Claim Appeals Off.*, 775 P.2d 97, 99 (Colo. App. 1989).

¶ 7 An individual is disqualified from receiving unemployment benefits if the separation from employment occurred for "reasons including, but not limited to," the failure to "meet established job performance or other defined standards." § 8-73-108(5)(e)(XX). A

3

claimant is properly disqualified under this subsection if she knew what was expected of her and failed to "satisfactorily perform the job thereafter." *Pabst v. Indus. Claim Appeals Off.*, 833 P.2d 64, 64-65 (Colo. App. 1992).

¶ 8      A worker can receive benefits only if unemployed through no fault of her own. § 8-73-108(1)(a); *see Bara v. Indus. Claim Appeals Off.*, 2023 COA 19, ¶ 11. For purposes of the unemployment statutes, fault does not require culpability; rather, it requires a volitional act, or that the employee "exercised some control over the circumstances resulting in the discharge from employment." *Cath. Health Initiatives Colo. v. Indus. Claim Appeals Off.*, 2021 COA 48, ¶ 13 (quoting *Gonzales v. Indus. Comm'n*, 740 P.2d 999, 1003 (Colo. 1987)). Whether a claimant is at fault for a separation from employment must be determined "on a case-by-case basis, with due consideration given to the totality of the circumstances in each particular situation." *Morris v. City & County of Denver*, 843 P.2d 76, 79 (Colo. App. 1992).

### C.    Evidence Below

¶ 9      At the hearing, Scott first testified that she wasn't aware that Safeway had a shoplifting policy. But she then admitted that, when

she began employment in 2021, she watched training videos. She also conceded that the videos were available in her online employee portal, but acknowledged that she didn't watch all of them.

¶ 10 Scott's supervisor testified that Safeway gave Scott a list of training videos that she had to complete before beginning work, and that those videos covered the shoplifting policy. He also testified that Scott's signature appeared on a written copy of the shoplifting policy, which was included in the record. He testified that Scott "does know about the shoplifting policy" because she "signed the documentation on it." And he testified that the policy had not changed since she signed it. When asked if Scott's actions were considered a "terminating incident," he replied, "Absolutely. It's not a question. If you breach the doors of the building, it is a complete violation of company policy."

¶ 11 Scott then acknowledged that she was "just now seeing [in the record evidence] something that [she] signed back in 2021." She then asked her supervisor why "there wasn't more training." Her supervisor testified that, generally speaking, employees are required to revisit the video training on shoplifting every year. The supervisor also testified that it was each employee's responsibility

5

to complete that training, and that if she didn't complete it, "that would have been on her end. She just didn't finish it."

¶ 12     After hearing this testimony and reviewing the record, the hearing officer found that Scott "signed off on, read, and acknowledged" the policy in 2021 and that "the shoplifting policy video was available to her in her online portal." The hearing officer also found that Scott clearly violated the policy by following the customer out the door and grabbing his bag. The hearing officer concluded that Scott knew what was expected and failed to satisfactorily perform her job thereafter, therefore disqualifying her from receiving benefits under section 8-73-108(5)(e)(XX).

¶ 13     The Panel affirmed, finding no reversible error in the hearing officer's decision. The Panel agreed with the hearing officer's conclusion that Scott's actions "were contrary to the reasonable and known expectations of the employer when addressing potential shoplifting" and that her actions were volitional.

### III.   Analysis

¶ 14     It is the hearing officer's responsibility, as trier of fact, to weigh the evidence, assess credibility, resolve conflicts in the evidence, and determine the inferences to be drawn therefrom. *Hoskins v.*

*Indus. Claim Appeals Off.*, 2014 COA 47, ¶ 10. Like the Panel, we may not, on review, reweigh the evidence presented or disturb the hearing officer's credibility determinations. *Id.*

¶ 15 Safeway's shoplifting policy provides that its "primary focus and commitment is to the safety and security of all our employees, customers, and vendors." It also notes that "improperly handling a shoplifting situation could lead to personal, financial, and reputational risk to you, customers, vendors, the shoplifter, and [Safeway]." The policy then has, in capital letters, things an employee should "NEVER" do, including accusing someone of shoplifting, confronting a shoplifter, attempting to stop a shoplifter, following or chasing a shoplifter, or "entering into any kind of physical confrontation." While Scott initially asserted that she wasn't aware of this policy, she later acknowledged that she had signed a written copy of it. Scott's argument on appeal is primarily that she should have had additional training after her rehire. But she acknowledged that the training was available to her in her online portal, and her supervisor testified that it was her responsibility to revisit the training every year. The record therefore

contains substantial evidence supporting the hearing officer's findings.

¶ 16    We also discern no error as a matter of law. The hearing officer and the Panel concluded that Scott acted volitionally and thus was at fault for her job separation. Acting with volition generally means having the power to choose and decide, or exercise some control over the circumstances, as opposed to acting in a manner that is "essentially involuntary." *See Simon v. Indus. Claim Appeals Off.*, 2023 COA 74, ¶ 32. Scott chose to confront the shoplifter, follow him out the door, and engage in a physical confrontation. Because that volitional act violated Safeway's policy, and because the evidence supported the conclusion that she was aware of the policy, we discern no basis to set aside the determination that Scott was at fault for her job termination and disqualified from benefits under section 8-73-108(5)(e)(XX).

## IV.   Disposition

¶ 17    We affirm the Panel's order.

JUDGE GROVE and JUDGE SCHUTZ concur.