24CA1326 Ahmadi v ICAO 02-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1326
Industrial Claim Appeals Office of the State of Colorado
DD No. 12233-2024

Hadi Ahmadi,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Swissport USA
Inc.,

Respondents.

ORDER AFFIRMED

Division IV
Opinion by JUDGE KUHN
Harris and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

Hadi Ahmadi, Pro se

No Appearance for Respondents

¶ 1 In this unemployment benefits case, Hadi Ahmadi seeks review of the Industrial Claim Appeals Office (Panel) order affirming a hearing officer's decision disqualifying him from receiving unemployment benefits after his job separation from Swissport USA. We affirm the Panel's order.

## I. Background

¶ 2 Swissport employed Ahmadi as a warehouse worker near Denver International Airport for approximately three months. Swissport discharged Ahmadi because he yelled at his supervisor on the warehouse floor and then became angry when a manager called the airport police to assist with the situation. Ahmadi continued to argue with the manager, who told him to surrender his work badge and leave the property. Ahmadi eventually left after the police arrived. Swissport suspended Ahmadi's employment pending a human resources investigation, and then terminated his employment on March 25, 2024.

¶ 3 Ahmadi applied for unemployment benefits, but a deputy for the Division of Unemployment Insurance determined that under section 8-73-108(5)(e)(VII), C.R.S. 2024, he was disqualified because his job separation was due to the violation of a company rule that

could have resulted in serious damage to the employer's property or interests. Ahmadi appealed the deputy's decision. After an evidentiary hearing, the hearing officer affirmed the deputy's decision — on different grounds — as a disqualification under section 8-73-108(5)(e)(XIV) (rude, insolent, or offensive behavior not reasonably to be countenanced by a customer, supervisor, or fellow worker). The Panel affirmed the hearing officer's determination.

## II. Analysis

¶ 4 Ahmadi, proceeding pro se, urges us to set aside the Panel's order because (1) his termination was "revenge" for filing a workers' compensation claim; (2) "their" lawyer allegedly made an offer of settlement of $5,000; (3) none of the witnesses who worked his shift were willing to testify, and the witnesses who did testify were from "another shift who came to work that day"; and (4) he asked for camera footage of the incident but it was not provided and then was deleted. We reject these contentions and affirm the Panel order.

### A. Legal Principles and Standard of Review

¶ 5 We will uphold the Panel's decision unless the findings of fact do not support the decision or the decision is erroneous as a matter of law. § 8-74-107(6)(c)-(d), C.R.S. 2024; *see Mesa Cnty. Pub. Libr.*

*Dist. v. Indus. Claim Appeals Off.*, 2017 CO 78, ¶ 17. Whether a worker is entitled to benefits depends on the reason for unemployment. *See Debalco Enters., Inc. v. Indus. Claim Appeals Off.*, 32 P.3d 621, 623 (Colo. App. 2001). Workers can receive unemployment benefits only if unemployed through no fault of their own. *Mesa Cnty. Pub. Libr. Dist.*, ¶ 18. Determining whether a claimant is at fault for the employment separation requires a case-specific consideration of the totality of the circumstances, *Morris v. City & Cnty. of Denver*, 843 P.2d 76, 79 (Colo. App. 1992), using an objective standard, *Davis v. Indus. Claim Appeals Off.*, 903 P.2d 1243, 1245 (Colo. App. 1995).

¶ 6    An individual is disqualified from receiving unemployment benefits if the separation from employment occurred based on the "[r]udeness, insolence, or offensive behavior of the worker not reasonably to be countenanced by a customer, supervisor, or fellow worker." § 8-73-108(5)(e)(XIV). In determining whether this subsection applies, we consider "whether a reasonable person in the position of the fellow worker and others would have found [the] claimant's action to be so rude, insolent, or offensive as not to be countenanced." *Davis*, 903 P.2d at 1245.

## B.    Proceedings Below

¶ 7    At the hearing, Ahmadi provided extensive testimony with the assistance of interpreters.  He alleged that he was "not shouting," but admitted he "raised his voice" a few times because his back hurt.  He also testified that he was not close to the manager and was not "threatening."  He admitted he became increasingly angry when informed that police had been called, because of his concern about putting his green card status in jeopardy.  And he admitted that he told the manager they were "not fit to be a manager."

¶ 8    Swissport did not present witnesses at the hearing, but provided written statements signed by employees who witnessed the incident on the warehouse floor.  The record also contained a "corrective action form," dated March 25, 2024, detailing the incident.  That form, signed by Swissport's general manager, indicated that Ahmadi violated company policy by "getting into a verbal altercation with a manager and supervisor on the evening of March 20," and then refusing "to leave when asked, and the police had to be called."

## C. Discussion

¶ 9 Regarding Ahmadi's first and second arguments on appeal, we are unable to discern from the record whether Ahmadi made a workers' compensation claim and, if so, whether there was some offer of settlement as he alleges. We determine, however, that whether or not there was such a claim or offer is not relevant to Ahmadi's unemployment benefits claim. *See Sch. Dist. No. 1 v. Fredrickson*, 812 P.2d 723, 724 (Colo. App. 1991) (A "hearing officer is not bound by determinations of any other agency, administrative body, or forum which is not required to make its decision under the Employment Security Act.").

¶ 10 Further, during his testimony, Ahmadi generally contended that he had back pain that prevented him from lifting heavy items. But when asked by the hearing officer whether he was fired because of a medical condition, he responded, "No. They say that I was loud and I shouted. No." His own testimony thus weighs against his argument that a medical condition was the true reason for his discharge.

¶ 11 We also reject Ahmadi's third and fourth arguments on appeal. As best we can tell, Ahmadi asserts that the "witnesses" who

provided written statements concerning the March 20 incident were not the regular workers on his shift. However, it does not appear that the hearing officer explicitly considered those statements as a basis for his decision. Instead, the hearing officer relied on Ahmadi's own testimony acknowledging that he was "very angry" and had "raised his voice" with management.

¶ 12    Additionally, the Panel noted, and Ahmadi does not dispute, that before the hearing, he never asked the Division of Unemployment Insurance to issue administrative subpoenas to compel these individuals to attend the hearing. *See* Dep't of Labor & Emp. Reg. 11.2.19, 7 Code Colo. Regs. 1101-2 (describing procedures for obtaining administrative subpoenas). Given the absence of any request for administrative subpoenas, Ahmadi has not explained the legal basis by which the hearing officer should have "compelled" these individuals to appear and testify.

¶ 13    Finally, during the hearing, Ahmadi told the hearing officer he had requested the submission of any recordings from any cameras at the warehouse. But when asked by the hearing officer whether "these cameras have sound," he responded, "I do not know. I only noticed that the warehouse had cameras. I don't know if they

record sound or not." The hearing officer then asked, "Okay. If it's not known whether they record sound and you're saying you were fired for raising your voice, how will these camera footage videos show me anything?" Ahmadi opined that the footage would show how far he was from the manager when the incident occurred. The hearing officer allowed him to testify regarding the estimated distance of ten to fifteen meters. We conclude that the hearing officer did not incorrectly deny a continuance because any camera footage, even if available, would be cumulative and thus irrelevant. *See* C.R.E. 403.

¶ 14 We are also satisfied that Ahmadi's conduct, described as yelling, refusing to leave, and becoming very angry when told the airport police had been contacted, was objectively, rude, insolent, or offensive such that a reasonable supervisor or fellow worker would not countenance it. *See Olsgard v. Indus. Comm'n*, 548 P.2d 910, 910-11 (Colo. 1976) (affirming disqualification from benefits to worker for rude and offensive conduct after he told an owner, in the presence of other employees, that he would "puke" in the owner's face). Here, Ahmadi testified that he told a manager they did not know how to be a manager. While Ahmadi explained that his anger

7

toward the manager stemmed from his concern about a green card being jeopardized, and his earlier frustration with being asked to lift things with back pain, the hearing officer found that he had control over his conduct when reacting to that concern. *See Richards v. Winter Park Recreational Ass'n*, 919 P.2d 933, 934 (Colo. App. 1996) (For purposes of the unemployment statutes, fault includes "a volitional act or the exercise of some control or choice in the circumstances leading to the discharge from employment such that the claimant can be said to be responsible for the termination."). The totality of the record supports this finding.

¶ 15    In sum, after reviewing the record evidence and applying our applicable standard of review, we cannot disturb the determination that Ahmadi was at fault for his job termination and therefore disqualified from benefits under section 8-73-108(5)(e)(XIV).

### III.    Disposition

¶ 16    The Panel's order is affirmed.

JUDGE HARRIS and JUDGE YUN concur.