25CA0119 Garcia v ICAO 05-29-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0119
Industrial Claim Appeals Office of the State of Colorado
DD No. 20041-2024

Rena Garcia,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado,

Respondent.

ORDER AFFIRMED

Division VI
Opinion by JUDGE SCHUTZ
Welling and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

Rena Garcia, Pro Se

No Appearance for Respondent

¶ 1     Rena Garcia appeals the denial of her application for unemployment benefits.  We affirm.

## I.     Background

¶ 2     Garcia worked for King Soopers as a meat assistant for sixteen years.  In March 2024, Garcia told a manager that she wanted to quit because of conflicts with her supervisor that management refused to address.  Garcia then agreed to transfer to a different King Soopers store.  Following a car accident two days after her transfer, Garcia again stated that she wanted to quit, but King Soopers placed her on a leave of absence.  After her leave expired, Garcia never returned to work.

¶ 3     Garcia applied for unemployment benefits.  A deputy for the Division of Unemployment Insurance denied her application under section 8-73-108(5)(e)(XXII), C.R.S. 2024.  That provision states that an employer is not liable for benefits when an employee quits "[u]nder conditions involving personal reasons."

¶ 4     Garcia appealed the deputy's determination and a hearing officer affirmed the denial of benefits.  Garcia appealed the hearing officer's decision to the Industrial Claim Appeals Office (the Panel).

¶ 5     The Panel set aside the hearing officer's decision and remanded for further proceedings because the hearing officer did not adequately "develop the evidence" concerning the dispositive issues. The Panel ordered another hearing "to provide the parties with the opportunity to present evidence concerning [Garcia's] contentions," including whether she quit because of a toxic work environment. The Panel also ordered the hearing officer to decide whether Garcia's resignation was volitional, or whether she was entitled to a full award of benefits because her working conditions were unsatisfactory under section 8-73-108(4)(c).

¶ 6     Following another hearing, the hearing officer again affirmed the deputy's decision, but modified the relevant disqualifying section to section 8-73-108(5)(e)(II) (quitting employment because of dissatisfaction with a supervisor with no evidence to indicate that supervision is other than that reasonably to be expected in the proper performance of work). Garcia again appealed to the Panel, which affirmed.

## II. Discussion

### A. Legal Principles and Standard of Review

¶ 7     Workers can receive unemployment benefits only if they become unemployed through no fault of their own.  *See Debalco Enters., Inc. v. Indus. Claim Appeals Off.*, 32 P.3d 621, 623 (Colo. App. 2001).  Determining whether a claimant is at fault for an employment separation requires a case-specific consideration of the totality of the circumstances.  *Morris v. City & Cnty. of Denver*, 843 P.2d 76, 79 (Colo. App. 1992).  We will uphold the Panel's decision unless the findings of fact do not support the decision or the decision is erroneous as a matter of law.  § 8-74-107(6)(c)-(d), C.R.S. 2024; *see Mesa Cnty. Pub. Libr. Dist. v. Indus. Claim Appeals Off.*, 2017 CO 78, ¶ 17.

### B. Additional Background

¶ 8     The following facts are taken from the hearing transcripts and other record evidence.  In March 2024, Garcia improperly extended the "code date" on packaged shrimp and was counseled, but not disciplined, about the incident.  She then emailed a district manager and said she wanted to quit.  The manager asked Garcia if

she wanted to transfer to a different store instead, and Garcia agreed to the transfer.

¶ 9     Garcia worked at the new store for two days.  On March 27, her son texted Garcia's new supervisor, Jackson, that Garcia was in a car accident and would be absent that day.  Jackson responded that he was sorry to hear about that and told the son that either he or Garcia needed to call the store manager.  The next day, Garcia called and spoke to someone in the store to advise that she was still recovering.

¶ 10    Two days later, Jackson texted Garcia to ask how she was feeling.  Garcia texted back, "Do I still have a job?  I have called in the last two days and I don't know if you even want me back."  Jackson responded, "Yes, you still have a job.  Nobody received a call yesterday, so they thought you 'no-call, no-showed.'  I was off the last two days.  I still need you to close tomorrow, will I see you then?"  Garcia replied, "I spoke to Aireal and yes I can.  My car is totaled and I haven't gotten paid.  I'll figure it out one way or the other."

¶ 11    On March 30, the day she was supposed to report to work, Garcia texted Jackson that she was running late but would be in.

Jackson replied that the right time to tell him this was not when she was supposed to arrive. According to Garcia, she received this text while she was at a gas station and decided to quit. She did not go to work.

¶ 12    The manager of the new store, Marie, attempted to call Garcia, but Garcia's voicemail was full. On April 8, Garcia called Marie to ask about her pay. Marie asked Garcia to come to the store to meet with her. Garcia met with Marie and a human resources representative that day, and signed a leave of absence form that placed her on a personal leave of absence until May 8. Garcia never returned to work. Her official termination date was June 15, 2024.

### C.    Garcia's Contentions

¶ 13    Representing herself on appeal, Garcia maintains, as she did at the hearing, that the work environment at King Soopers was so toxic that she had no choice but to quit. Specifically, she contends that her supervisor at the first store, Heather, laughed at her and talked about her with coworkers. Garcia believes Heather did this because Garcia told managers that Heather also improperly extended code dates. She also alleges "harassment" by Heather's husband, who worked for King Soopers at a different store, because

he sometimes came to the store and "stared her down." Garcia also asserts Heather's supervisor refused to talk to her and intentionally avoided her. Because of this environment, she wanted to quit, but instead agreed to a transfer to a new store.

¶ 14    After the transfer, she found out that Heather's son-in-law, Gabe, worked in the meat department there. Garcia complained that Gabe refused to talk to her, and Garcia thought that that was due to his relationship with Heather. Garcia also alleged that Heather told Jackson "bad things" about her. Garcia asserts that all of these factors resulted in her "having no choice but to quit."

### D.    Analysis

¶ 15    The hearing officer ultimately found that Garcia quit her job "because she believed there was harassment, discrimination, and a toxic environment from her prior supervisor and the supervisor's son-in-law." The hearing officer noted that the son-in-law was not Garcia's supervisor. While the hearing officer considered whether the working conditions were unsatisfactory or hazardous under section 8-73-108(4)(c), he ultimately found that "a reasonable worker, similarly situated" would not find that the conditions

warranted resignation.  The Panel agreed.  Given the record before us, we discern no error in the Panel's decision.

¶ 16    Whether working conditions are unsatisfactory must be determined by an objective standard.  *Rodco Sys. Inc. v. Indus. Claim Appeals Off.*, 981 P.2d 699, 701 (Colo. App. 1999).  Hazardous conditions are those "determined by the division to exist, that could result in a danger to the physical or mental well-being of the worker."  *Id.*

¶ 17    During the second set of hearings after remand, the hearing officer specifically asked Garcia about certain factors enumerated in section 8-73-108(4)(c), such as risk to health, safety and morals, physical fitness, prior training, experience, prior earnings, distance from the work from the residence, and working conditions of workers engaged in the same or similar work for the same and other companies in the locality.  While Garcia generally answered that she felt the environment posed a risk to her mental health, she provided limited examples of how her symptoms were attributable to working conditions that were different than those experienced by other employees engaged in similar work.

¶ 18    Our review of the record indicates that Garcia was upset about being talked to about the code date issue at the first store. She also believed it was not handled correctly and that other employees, including Heather, had similar issues. She also alleges that she was laughed at and excluded by other employees. Ultimately, however, she was not disciplined in any way about this incident, and when she told a manager she wanted to quit, she was offered a transfer to a different store.

¶ 19    The record contains conflicting evidence regarding whether Garcia notified the correct people at the new store following her car accident, but, again, she was not disciplined at that time for the alleged "no-call, no-show." Instead, King Soopers placed her on a leave of absence rather than terminate her. Then, she never showed up for work again.

¶ 20    According to Garcia's own testimony, she "quit King Soopers." When asked why she quit, she responded,

> I quit from Store 82 because of Heather and the way she treated me and the things that I went through with her. And after I was transferred to Store 20, I quit because I was in a department as a head over her son-in-law and was going through the same thing I went through at Store 82.

¶ 21 A worker's beliefs about the nature of the working conditions, without more, does not entitle the worker to unemployment benefits under section 8–73–108(4)(c). *See Rodco*, 981 P.2d at 701 (collecting cases and noting that a claimant's subjective statements of discomfort are insufficient to establish unsatisfactory or hazardous working conditions under the statute).

¶ 22 As the Panel recognized, the hearing office could have drawn different inferences concerning the reasons for Garcia's resignation from the evidence at the hearings. But the hearing officer weighed the competing factual evidence and found that Garica resigned because she was dissatisfied with her supervision. As the Panel noted, if the supervision is reasonably to be expected in the proper performance of the work, then disqualification is proper under section 8-73-108(5)(e)(II). *See Musgrave v. Indus. Claim Appeals Off.*, 762 P.2d 686, 688 (Colo. App. 1988) (noting that even though a supervisor could have used better practices, the supervisor's actions did not justify resignation).

¶ 23 Garcia also contends that the hearing officer "couldn't have really been weighing the evidence" and "got the facts wrong" because the employer's representatives "lied" at the hearing. We,

like the Panel, may not reweigh the evidence presented or disturb the hearing officer's credibility determinations. *Hoskins v. Indus. Claim Appeals Off.*, 2014 COA 47, ¶ 10. In that regard, we also note that the hearing officer specifically found Garcia not credible.

¶ 24     The hearing officer and the Panel determined that the proximate cause of Garcia's job separation was her choice to resign. Thus, she was not entitled to an award of benefits on a no-fault basis unless she established that her separation was essentially involuntary under the objective circumstances. *See Cole v. Indus. Claim Appeals Off.*, 964 P.2d 617, 619 (Colo. App. 1998) ("[T]he hearing officer did not make any evidentiary finding, implicitly or otherwise, that claimant was unable to continue working at the time of her resignation, nor would the record support any such finding.").

¶ 25     For these reasons, we discern no error in the Panel's determination that Garcia was disqualified from receiving unemployment benefits.

### III.    Disposition

¶ 26     The Panel's order is affirmed.

JUDGE WELLING and JUDGE KUHN concur.